[No. 34792.    Department Two.    September 24, 1959.]

THE CITY OF SEATTLE, *Respondent,* v. MARION C. ROSS, *Appellant.*[1]

[1]Reported in 344 P. (2d) 216.

*Burton & Greenlee (Philip L. Burton,* of counsel), for appellant.

*A. C. Van Soelen* and *Thomas J. Owens,* for respondent.

ROSELLINI, J.—The appellant was charged in municipal court with a violation of Seattle ordinance No. 40149-9a, as amended by ordinance No. 86061-1, which became effective on or about May 4, 1957, and has not been heretofore construed. The provision under which the appellant was charged, tried and found guilty, reads:

"It is unlawful for anyone not lawfully authorized to frequent, enter, be in, or be found in, any place where narcotics, narcotic drugs or their derivatives are unlawfully used, kept or disposed of."

On appeal to the superior court, the appellant waived jury trial. According to the memorandum decision, the court believed the appellant's testimony that he had no knowledge that there were narcotics in the apartment where he was arrested, and that he went to the apartment for the purpose of borrowing money from the tenant. However, the court was of the opinion that it was the purpose of the ordinance to penalize anyone found upon the premises, regardless of the innocence of his errand, and imposed upon the appellant a fine of twenty-five dollars and a thirty-day jail sentence. The jail sentence was suspended because there was no evidence that the appellant had ever used narcotics or had been guilty of any criminal offense.

Appealing from that judgment and sentence, the appellant challenges the ordinance as unconstitutional. It is his contention that the ordinance constitutes an unreasonable exercise of the police power, inasmuch as it makes unlawful the doing of innocent acts which are unrelated in any way to the narcotic traffic and the punishment of which could not conceivably tend to discourage that traffic. He points out, and rightly, that the ordinance gives to the person found upon premises where narcotics happen to be illegally used, kept, or disposed of, no opportunity to explain his presence, but creates a conclusive presumption that he was there for an unlawful purpose unless he can show that he was authorized by some agency of government to go upon the premises. The appellant points out, and the respondent does not deny the fact, that in a place where narcotics are illegally kept, used, or disposed of, there is ordinarily no physical characteristic which would serve to warn an innocent person of the presence of such narcotics.

Nevertheless, under the language of the ordinance, the mailman, the delivery man, the solicitor, the bill collector, the painter and the paperhanger, the carpenter, and the doctor, go upon such premises at their peril, however ignor-

ant they may be that narcotic drugs are illegally kept, used, or disposed of there. Likewise, the customer who enters a pharmacy to have a prescription filled, not knowing that the druggist's license has expired or been revoked, or the patron of a restaurant or bar who is ignorant of the fact that narcotics are exchanging hands at a nearby table, is subject to arrest and punishment.

The respondent maintains that the law was not intended to be applied so unreasonably (although it contends that it was meant to encompass the appellant) and that its purpose is simply to raise a presumption of involvement with the illegal traffic. If this is indeed its purpose, the language used is inadequate to convey that meaning. The only persons excluded from the operation of the ordinance are those lawfully authorized to be upon the premises. The respondent would have us rewrite the statute to exclude persons upon the premises for lawful purposes, as well as those who are authorized or commissioned to go there. This the court cannot do. Where the language of a statute is plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the statute itself furnishes a rule of construction beyond which the court cannot go. *Parkhurst v. Everett*, 51 Wn. (2d) 292, 318 P. (2d) 327. The trial court had no difficulty in discerning the meaning of the words used in this ordinance. A person "lawfully authorized," the court decided and we agree, is a person carrying some express authority to go upon the premises, as a law enforcement officer, narcotic agent, or the like, and not one who goes upon some lawful business but without express authority.

This being the case, the effect of the ordinance is to create an irrebuttable presumption that any person found in proximity to unlawfully kept narcotic drugs and not carrying with him some official authorization, is guilty of participating in the narcotic traffic.

It is agreed that the purpose of the ordinance was to facilitate the discovery and apprehension of persons engaged in such traffic and was enacted in the exercise of the city's police power.

■ The police power of a municipality is derived through Art. XI, § 11, of the state constitution. Commenting upon that provision of the constitution, this court said in *Detamore v. Hindley,* 83 Wash. 322, 145 Pac. 462:

"This is a direct delegation of the police power as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws."

■ The grant of police power to a city carries with it the necessary implication that its exercise must be reasonable. *Patton v. Bellingham,* 179 Wash. 566, 38 P. (2d) 364, 98 A. L. R. 1076; *Detamore v. Hindley, supra; Seattle v. Ford,* 144 Wash. 107, 257 Pac. 243; *State v. Spiller,* 146 Wash. 180, 262 Pac. 128; 2 Dillon on Municipal Corporations (5th ed.), § 589, 43 C. J. 213, 228.

■ The question, therefore, arises whether the ordinance in question is reasonable and proper for the protection of the health, safety, morals, and general welfare of the community. Whether the facts of a particular case warrant the assertion of police power, is a judicial question to be resolved by the courts. *Patton v. Bellingham, supra,* and authorities cited therein. This court said in that case:

"While the interest of the public may be likened unto an irresistible force which compels where it requires, it nevertheless must, under constitutional provisions, both Federal and state, respect the rights of the individual. While the latter may not occupy the fixity of an immovable object, they nevertheless have the protection and sanction of the fundamental law of the land, and they recede before no less a force than that of public necessity.

" 'To sustain the individual freedom of action contemplated by the Constitution, is not to strike down the common good but to exalt it; for surely the good of society as a whole cannot be better served than by the preservation against arbitrary restraint of the liberties of its constituent members.' *Adkins v. Children's Hospital,* 261 U. S. 525 (561), 43 S. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238."

■ It is well established that a legislative body may create a presumption of one fact from evidence of another having a rational connection therewith, without a denial of

due process or equal protection of the law. *State v. Spiller, supra; State v. Fitzpatrick,* 141 Wash. 638, 251 Pac. 875; *Yee Hem v. United States,* 268 U. S. 178, 69 L. Ed. 904, 45 S. Ct. 470. But, as Mr. Justice Roberts, in *Tot v. United States,* 319 U. S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241, in speaking for the court said:

" . . . a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts."

Furthermore, a statute creating a presumption which is arbitrary or which operates to deny a fair opportunity to repel it, violates the due process clause of the fourteenth amendment to the United States constitution. *Manley v. Georgia,* 279 U. S. 1, 73 L. Ed. 575, 49 S. Ct. 215. By the same token, if an irrebuttable presumption of guilt is created by a city ordinance, any deprivation of life, liberty, or property by virtue of such ordinance is a deprivation without due process of law.

Assuming that the city council had found, upon sufficient evidence, that there are characteristics peculiar to a place where narcotics are unlawfully used, kept, or disposed of, which would be readily recognizable to an ordinary person on approaching or entering the place, there is no doubt but that in the exercise of its police power, it could have enacted an ordinance creating a presumption that any person found upon the premises was there for the purpose of supplying, receiving, or using narcotics, and placing upon him the burden of explaining his presence. An enactment of this sort would not constitute a denial of due process, as the presumed fact would have a rational connection with the fact proved, and the accused would be given an opportunity to rebut the presumption.

But the ordinance under consideration here gives the accused no opportunity to exonerate himself and makes his presence upon the premises a crime, regardless of the legitimacy of his errand, unless he can show that he was authorized by law to go upon the premises. Granting that the purpose of the act is to discourage traffic in narcotics, the respondent fails to point out how that purpose is served by the punishment of individuals who have no connection with such traffic, and who cannot in the exercise of the highest degree of care protect themselves from violating the ordinance.

We are mindful of the degradation and misery flowing from the use of narcotic drugs. We are also committed to allow the maximum scope of police power in the control of the illegal use of narcotic drugs. However, all laws must meet the test of constitutionality. We are certain that an ordinance can be drafted to observe this test and also to control this evil without convicting the innocent and without hampering efficient law enforcement.

If every person found in comparative proximity to illegally kept narcotics without a warrant or other evidence of legal authority, were arrested, fined and imprisoned, no doubt the municipal authorities could feel assured that a considerable number of persons engaged in the traffic of narcotics would meet their just punishment. By the same token, if every child in a city beset with a problem of juvenile delinquency were confined in an institution, that problem would be eliminated. The Chinese, we are told,[2] for a long time held the firm conviction that the only way to roast a pig was to put it in the family home and burn it. Both they and we, it is hoped, have long since learned that, with industry and the exercise of imagination and reason, the prize can be had without the sacrifice.

We are convinced that the ordinance making it unlawful "to frequent, enter, be in, or be found in, any place where narcotics, narcotic drugs or their derivatives

[2]Charles Lamb. A Dissertation upon Roast Pig. The Essays of Elia, N. Y., John W. Lovell Company, n.d.

are unlawfully used, kept or disposed of," and giving a person found in such place no opportunity to explain his presence unless he can show some authorization, goes far beyond what is reasonably necessary to achieve its legitimate purpose and constitutes an abuse of the police power of the city. Consequently, the conviction of the appellant was without authority in law, and the judgment and sentence must be reversed and the case dismissed.

It is so ordered.

WEAVER, C. J., HILL, FINLEY, and FOSTER, JJ., concur.

[1]Reported in 344 P. (2d) 212.