[No. 56836-7.   En Banc.   September 12, 1991.]

THE CITY OF TACOMA, *Respondent*, v. THE STATE OF WASHINGTON, ET AL, *Appellants*.

*Kenneth O. Eikenberry, Attorney General,* and *Edward B. Mackie, Chief Deputy,* for appellants.

*Preston Thorgrimson Shidler Gates & Ellis,* by *Elizabeth Thomas,* for respondent.

*Katrin E. Frank* on behalf of the Northwest Women's Law Center, amicus curiae for appellants.

UTTER, J. — The City of Tacoma filed a petition with the State Office of Financial Management asking to be reimbursed, pursuant to RCW 43.135, for costs expended in implementing the Domestic Violence Prevention Act. The petition was denied. The City then filed this declaratory relief action against the State and several state officials, claiming a right to reimbursement pursuant to RCW 43.135. Judge Arnold of the Pierce County Superior Court held the State is required to reimburse the City of Tacoma for such costs. We affirm his decision.

## I

### A. The Domestic Violence Act.

In 1979, the Legislature enacted the domestic violence act.[1] Laws of 1979, 1st Ex. Sess., ch. 105, codified as RCW 10.99. The act went into effect in September 1979. It set forth procedural requirements for police, prosecutors and courts in domestic violence criminal cases. The 1979 act focuses on criminal remedies, and was enacted prior to RCW 43.135. It is not at issue in this case. (The Superior Court's judgment addresses the 1984 and 1985 acts only.)

### B. RCW 43.135.

In November 1979, the voters of the state of Washington passed Initiative 62. This initiative was intended to limit state tax revenues by tying increases in revenues to increases in state personal incomes. The initiative was codified as RCW 43.135. An additional purpose of the legislation was to assure that the State does not impose on any taxing district[2] responsibility for new programs or increased levels of services under existing programs unless they are paid for by the State. The statute provides:

> The legislature shall not impose responsibility for new programs or increased levels of service under existing programs on any taxing district unless the districts are reimbursed for the costs thereof by the state.

RCW 43.135.060(1).

### C. The Domestic Violence Prevention Act.

In 1984, the Legislature, apparently not satisfied with the effectiveness of the 1979 act, adopted the Domestic Violence Prevention Act. Laws of 1984, ch. 263, codified as RCW 26.50. This act expanded the definition of domestic violence and created a civil remedy in the form of a

---

[1]It is necessary to point out the acts have different names, as the parties tend to use them interchangeably. The 1979 act is entitled Domestic Violence — Official Response; the 1984 act is the Domestic Violence Prevention Act; and the 1985 act is an amendment to the 1984 act.

[2]There is no dispute that the City of Tacoma is a taxing district within the meaning of the statute.

protection order. It provides that any person who is a victim of domestic violence may file a petition for an order of protection. RCW 26.50.020(1). The person may obtain an ex parte order for immediate, temporary relief. RCW 26.50.070. A hearing is to be held within 2 weeks. RCW 26.50.050. At this hearing, the court has the authority to issue a permanent order which may: restrain the respondent's contact with the victim, order the respondent to stay away from the petitioner's home, award temporary custody of children, order the respondent to participate in treatment or counseling, and order any other relief the court deems necessary to protect the petitioner. RCW 26.50.060. This remedy is in addition to any other civil or criminal remedy. RCW 26.50.210.

The Domestic Violence Prevention Act imposed several new duties on courts and peace officers. All court clerk's offices are required to make available simplified forms and informational brochures. RCW 26.50.030(3). The clerk's office must also notify law enforcement agencies of no-contact orders. RCW 26.50.100. When a protective order is issued, it is generally the responsibility of peace officers to serve a copy on the defendant. RCW 26.50-.090(2). Such service takes precedence over service of other documents unless they, too, are of an emergency nature. RCW 26.50.090(3). Violation of a civil protection order is a misdemeanor and constitutes contempt of court. RCW 26.50.110(1), (3). Finally, if a police officer has probable cause to believe a person has violated a protection order, he *must* make an arrest, even though he may not have a warrant. RCW 26.50.110(2).

In addition, this act made various related amendments to the 1979 act. For example, it altered the definition of domestic violence and added four new crimes to the list contained in RCW 10.99.020. The act now *mandates* arrest when an officer has probable cause to believe that a domestic violence crime has been committed. RCW 26.50.110(2); RCW 10.31.100(2)(a). Also, in addition to other duties, the officer must advise the victim of the

availability of a shelter or other services; must provide a toll free telephone number for obtaining information regarding such services; and must give advice concerning legal rights, including the right to file for a protective order. RCW 10.99.030. The amendments also include a provision that any restraining order issued in connection with a release pending trial or a conviction be entered into a statewide computer information system. RCW 10.99.040(5), .050(3).

In 1985, the Legislature made some amendments to the 1984 act concerning jurisdiction of municipal and district courts; realignment of parties and waiver of filing fees; and reimbursement of costs and fees by respondents. Laws of 1985, ch. 303, codified as RCW 26.50.020(2), .030, .060(1)(f).

## II

In January 1986, the City of Tacoma (the City), pursuant to RCW 43.135, filed a petition with the State Office of Financial Management requesting approximately $425,000 per year for alleged costs relating to the Domestic Violence Prevention Act. The Legislature eventually considered the claim and denied it. As a result, the City brought this declaratory relief action against the State and several state officials, claiming a right to reimbursement pursuant to RCW 43.135. The Superior Court found that "the laws of 1984 and 1985 constitute a new program and/or an increased level of service under an existing program as was contemplated with[in] the meaning of RCW 43.135 . . . [and] that these laws imposed new and increased levels of responsibility on the City of Tacoma". Report of Proceedings, at 12. In May 1989, the court entered a summary judgment order in favor of the City, holding that the State must reimburse the City for costs mandated by the Domestic Violence Prevention Act. A bench trial was held to determine the amount of damages owed. The court found that the Domestic Violence Prevention Act "imposed new programs and expanded levels of

service upon municipalities relative to the problem of domestic violence." Findings of fact and conclusions of law; Clerk's Papers, at 250. These included the expansion of the definition of domestic violence, the creation of new rights and a civil remedy, the requirement that arrests are mandatory, and the imposition of new duties upon municipalities and courts. These remedies were "separate and distinct from those criminal remedies provided for under the 1979 law." Findings of fact and conclusions of law; Clerk's Papers, at 252. Therefore, the court concluded, the City of Tacoma was entitled to reimbursement from the State for costs incurred as a result of the Domestic Violence Prevention Act. The court found the State owed the City $580,811 for costs incurred up until December 31, 1988, in complying with the Domestic Violence Prevention Act.[3] The State appealed directly to this court.

### III

The State recognizes that the Domestic Violence Prevention Act imposes certain responsibilities upon local government, but contends that RCW 43.135 does not apply to this type of situation. The State argues the statute only applies to situations where the State transfers to local governments programs and services which have traditionally been state obligations, paid for by state revenues. The State reasons that law enforcement has traditionally been a function of local government. Therefore, it argues, any legislation which affects law enforcement functions, such as the Domestic Violence Prevention Act, is not within the purview of RCW 43.135. Furthermore, the State contends that the 1984 and 1985 acts are merely modifications of an existing program designed to make it more efficient and streamlined.

---

[3]The trial court limited the damages to costs specifically related to "new programs" and "increased levels of service under existing programs" imposed by the Domestic Violence Prevention Act, and excluded costs "expended in the enforcement of criminal laws which were clearly in existence for the benefit of society as a whole, and victims in particular, prior to 1984." Findings of fact and conclusions of law; Clerk's Papers, at 259.

The Northwest Women's Law Center (Law Center) filed an amicus brief in support of the State. The Law Center argues the Domestic Violence Prevention Act is merely an extension of the 1979 act, intended to clarify and reemphasize the criminal justice services set forth in the earlier legislation. The State and the Law Center attribute the City's rise in costs to an increase in society's awareness of the problem, rather than to the new legislation.

The City responds that RCW 43.135 is clear and unambiguous and does not limit in any way the right to reimbursement as long as the costs were incurred by the State's imposition of "new programs or increased levels of service." The City claims it incurred "immediate and massive" costs when the State imposed new programs and increased levels of service under the Domestic Violence Prevention Act. Under the plain and ordinary meaning of the statute, its costs are the type of costs intended to be reimbursed by the State.

Two issues are presented for review:

A. Does the Domestic Violence Prevention Act create new programs or increased levels of service which require reimbursement pursuant to RCW 43.135?

B. What costs are allowed under RCW 43.135? (Did the trial court err in its award of damages?)

## A

In order to answer the first issue, we must consider two arguments raised by the State: (1) that RCW 43.135 applies only to programs and services which have traditionally been state functions and which the State is shifting to local government without reimbursement; and (2) that the Domestic Violence Prevention Act is merely an extension of the 1979 act, intended to streamline and render it more efficient.

The language of RCW 43.135 does not support the State's construction that the statute applies only to programs and services which have traditionally been state functions. The statute provides:

> The legislature shall not impose responsibility for new programs or increased levels of service under existing programs on any taxing district unless the districts are reimbursed for the costs thereof by the state.

RCW 43.135.060(1). Nothing in this language limits this provision to "state" programs or services. "Where the language of a statute is plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the statute itself furnishes a rule of construction beyond which the court cannot go." *Seattle v. Ross*, 54 Wn.2d 655, 658, 344 P.2d 216 (1959).

The State claims we should look to the voters' pamphlet to ascertain the intent of the people. *See Department of Rev. v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973) (material in the official voters' pamphlet may be considered by the court in determining the purpose of a law adopted by a vote of the people). Because the intent of the people is clearly expressed in the statute, we do not need to look to the pamphlet. But even if we were to do so, there is nothing there to support the State's construction. The pamphlet provides:

> The initiative, however, would prohibit the legislature from requiring local governments to offer new or expanded services unless the costs are paid by the state.

Clerk's Papers, at 115 (ballot synopsis, written by the Attorney General). The statement in support of Initiative 62 said that the initiative was drafted, in part, to "[p]rotect local governments from having to pay for programs mandated by the legislature." Clerk's Papers, at 114. The Domestic Violence Prevention Act falls within the stated purpose.

There is nothing in the language of the statute, either as it appeared in the voters' pamphlet or as it appears in RCW 43.135, which supports the State's construction that it applies only to programs which the State is shifting to local governments without reimbursement.

We have decided two cases involving RCW 43.135. Neither one supports the State's contentions. In *Seattle*

*v. State*, 100 Wn.2d 16, 666 P.2d 359 (1983), several cities sought reimbursement from the State for the costs of installing electronic recording equipment in their municipal courts. At issue was the statute creating courts of limited jurisdiction and the court rules enacted pursuant thereto. The State argued that it was the court rule and not the legislation which imposed the requirement for installation of recording equipment. We found this argument was "more convincing", and held that the installation of the equipment was a requirement imposed by this court rather than the Legislature, and that it was not a "new program" nor "an increased level of service" within the meaning of the statute. Therefore, the statute was not applicable. 100 Wn.2d at 22, 25-26. Although the State argued that the statute only applies to a shifting of "state" programs, we did not adopt this reasoning. There is nothing in the language of the holding to support the State's position in the present case.

In *State v. Howard*, 106 Wn.2d 39, 722 P.2d 783 (1985), the Attorney General prosecuted a criminal case pursuant to RCW 43.10.232. The trial court ordered the State, rather than the county indigent defense fund, to pay the attorney and expert witness fees. We affirmed the trial court based, in part, on RCW 43.135. 106 Wn.2d at 41. The State argues its position also finds support in *Howard*. We indicated the statute was passed to prevent the State from avoiding the effects of the state tax revenue limit by shifting responsibility for funding state programs to local governments. 106 Wn.2d at 43. However, this language is merely prefatory to our discussion of the statute and did not enter into our decision. There is no discussion as to whether the costs involved had traditionally been borne by the State. We stated: "by enacting RCW 43.10.230, the Legislature has directly increased the level of services provided to the public." 106 Wn.2d at 43. Because the State willingly assumed responsibility for providing this increased level of service, we

concluded the expense could not, consistent with RCW 43.135, be paid for by the County. 106 Wn.2d at 44.

The State emphasizes the fact that in *Howard* we only ordered the State to pay the extraordinary costs of the prosecution, and not those normally paid by the County. The County, however, asked that the State pay only these costs. Likewise, in the present case, the Superior Court limited the City's right to reimbursement to those costs which were directly attributable to the new responsibilities imposed by the Domestic Violence Prevention Act.

■ RCW 43.135 is not limited in its application to programs and services which have traditionally been state functions. Two Attorney General Opinions support our conclusion. While not binding, they are persuasive. In AGO 3 (1980), the Attorney General considered the costs imposed by legislation mandating the addition of superior court judgeships. The Attorney General stated if the legislation imposes an increased level of service through its legally mandated program with a resulting increase in costs, the State is liable to reimburse the taxing district. Because the addition of superior court judgeships increased the level of service to the public, the State was obligated to reimburse the taxing districts.

In AGO 24, at 5 (1980), the Attorney General stated the statute requires reimbursement "where, and to the extent that, mandatory state legislation results in either new services to the general public or in an actual increase in local governmental services offered to the public in some measurable, quantifiable sense." This idea was adopted by this court in *Howard*, 106 Wn.2d at 43. The benefit to the public here is measurable — there has been a significant increase in the reporting, prosecuting and handling of domestic violence complaints. The Domestic Violence Prevention Act increases the level of services to the public. Therefore, the State is obligated to reimburse the City.

We next consider whether the Domestic Violence Prevention Act was merely intended to streamline and render more efficient the 1979 act. The State bases this argu-

ment on language found in *Seattle v. State, supra*. There, the Cities argued that the legislation at issue created a "new program" or "increased levels of service" which required reimbursement. A dispute existed between the State and the cities as to the meaning of "programs" and "services". We said the State's approach — that the terms "programs" and "services" should be construed synonymously — was "more reasonable" and found that the purpose of the new appeals procedure was to "streamline and render more efficient appeals from courts of limited jurisdiction." 100 Wn.2d at 25. It is this language which the State now relies upon in the present case.

There is some merit to the State's argument that the 1984 and 1985 acts were intended to "streamline" and "render more efficient" the 1979 act. The Law Center explains this argument more fully in its amicus brief. It states the Domestic Violence Prevention Act mandates police and court action which should have been carried out under the 1979 act, *e.g.*, that permissive arrests are now mandatory, that domestic violence be treated as a crime, and that the notice which police officers should have been giving to victims concerning their rights and remedies is also now mandatory. The argument, however, fails to account for the new civil remedy, which did not exist under the 1979 act. Furthermore, the language in *Seattle v. State, supra,* may be distinguished on several grounds: it applies only to the particular legislation involved in that case; it is a prefatory remark, not a holding; and the legislation at issue in the present case does create an entirely new program for domestic violence.

The 1984 and 1985 acts do not simply mandate a response which should have been made earlier; rather, they create a "new program" and "increase the levels of service" within the meaning of RCW 43.135. In both the *Seattle v. State, supra,* and *Howard* cases, we construed "programs" and "services" synonymously to mean "measures designed to accomplish specific public goals and to benefit the public." *State v. Howard*, 106 Wn.2d at 43;

*Seattle v. State*, 100 Wn.2d at 24-25. The Domestic Violence Prevention Act falls within this definition. Vigorous enforcement of the criminal laws and the availability of an inexpensive, immediate civil remedy certainly benefit the public. The act benefits both the individual victim and society in that it provides immediate civil remedies in addition to the criminal remedies under the 1979 act. Creation of the civil remedy was found to be "a whole new service to the public". Report of Proceedings, at 11. By requiring law enforcement officers, clerks, prosecutors and courts to undertake procedures and proceedings which had not existed under the prior law, the Domestic Violence Prevention Act encompasses both "new programs" and "increased levels of service".

In *Seattle v. State, supra,* a 2-part test was used to determine when the State's obligation to reimburse local governments arises: (1) is the program or service a responsibility imposed by the Legislature; and (2) is it a new program or increased level of service under an existing program? 100 Wn.2d at 21. The Domestic Violence Prevention Act meets this test. The Superior Court found the act was a "new program" and that it "also increases the level of service to the public because its goal is the same, that is, to protect the rights of victims of domestic violence." Report of Proceedings, at 11. We hold the Domestic Violence Prevention Act is a responsibility which is imposed upon the City by the Legislature, and that it is a "new program" and "an increased level of services under an existing program". Therefore, we affirm the Superior Court's summary judgment that the State, pursuant to RCW 43.135, is liable to the City for costs relating to the Domestic Violence Prevention Act.

B

Having decided that the Domestic Violence Prevention Act is a program intended to be paid for by the State pursuant to RCW 43.135, we turn to the issue of damages. The State argues that no damages should have been

awarded because RCW 43.135 does not apply to the legis-
lation at issue. In the alternative, the State argues for a
partial reduction of the damage award. The City asks us
to deny the State's request for a reduction. The Superior
Court found the Domestic Violence Prevention Act

> increased levels of service to victims of domestic violence in
> that it mandated arrests, required advice of additional rights
> and created new programs by providing a civil remedy. . . .
> For those mandated services the State is responsible to reim-
> burse the City of Tacoma. The State is not liable to reim-
> burse the City for costs expended in the enforcement of
> criminal laws which were clearly in existence for the benefit
> of society as a whole, and victims in particular, prior to 1984.

Findings of fact and conclusions of law; Clerk's Papers, at
259.

■ Where the trial court has weighed the evidence, our
review is limited to ascertaining whether the findings of
fact are supported by substantial evidence and, if so,
whether the findings support the conclusions of law and
the judgment. *Morgan v. Prudential Ins. Co. of Am.*, 86
Wn.2d 432, 437, 545 P.2d 1193 (1976). A review of the
court's findings of fact reveals there is substantial evi-
dence to support the judgment.

With regard to the Domestic Violence Unit,[4] the
Superior Court found the costs of this unit which are
reimbursable are: the costs of service of protection order
petitions and other orders; the costs of the position which
was added for the purpose of serving protection orders;
and 20 percent of the cost of employing a Domestic Vio-
lence Advocate (finding she devoted 20 percent of her time
to the implementation of the 1984-85 legislation). Other
costs were denied due to lack of sufficient proof they were
incurred solely because of the 1984-85 acts. Findings of
fact and conclusions of law; Clerk's Papers, at 254-55. The

---

[4]Within the Tacoma Police Department there is a division for crimes against
persons and within that division is a special assault-domestic violence unit. Its
functions include investigating domestic violence calls, providing assistance to
victims of domestic violence, and serving protection orders and no-contact
orders. Clerk's Papers, at 158.

court awarded $301,445 for costs incurred by the Domestic Violence Unit.

The State alleges the trial court erred in computing some of these costs and refers us to its request for modification, Clerk's Papers, at 236-38. It alleges the costs for Detective Hill were found to be $48,855. In fact, the court awarded $48,835. Oral decision, at 3; findings of fact and conclusions of law; Clerk's Papers, at 254. The State also argues the costs for Detective Hill should be reduced because he spent only one-half of his time on service of protection orders. Detective Hill testified that another full-time detective position was added to the Unit in 1984, and that the Unit *as a whole* devoted half of its time to service of protection orders. Report of Proceedings, at 16-21. The Superior Court's oral ruling provides "reimbursement for Detective Hill or the equivalent of his position". Oral decision, at 3. The language contained in the findings of fact (above), indicates the trial court's award of *costs* for Detective Hill was not limited to Hill alone, but includes costs expended for service of protection orders by any detective within the Unit. We affirm these costs.

Finally, the State argues the court made an error in the computation of Officer Revelle's salary, which was computed to be $219,001. The State claims the salaries for this position between the years 1985 through 1988 total $189,989. The City claims the total should be $219,173.50. There is evidence in the record to support both figures. The record further reveals the court adjusted baselines and took into account benefits, longevity pay and overhead costs. The court explicitly stated it was not allowing any costs for 1989. Oral decision, at 3. We find no reversible error in the Superior Court's computation and affirm the total costs awarded for the Domestic Violence Unit.

The City claimed $289,849 in jail costs through December 31, 1988. With regard to these costs, the court found, because these costs and the identification costs are "potentially criminal matters contemplated under the

1979 act", some of these costs would have been incurred even in the absence of the 1984-85 acts. The court took into account the rising trend in arrests relating to domestic violence between 1981 and 1984. Therefore, in order to limit these costs to those arrests specifically arising from the 1984 and 1985 acts, it tripled the baseline and allowed only $125,375. Clerk's Papers, at 255-56; oral decision, at 5-6.

The court followed the same procedure for identification costs. It adjusted the baseline in order to limit these costs to those actually attributable to the Domestic Violence Prevention Act. Clerk's Papers, at 255-56; oral decision, at 5-6.

The Law Enforcement Support Agency (LESA) receives and dispatches phone calls and the patrol unit investigates, gives advice and makes arrests. The court found that other than the additional advice and the mandatory arrests, there was nothing being done which was not already required under the 1979 act. Oral decision, at 8. While there was certainly an increase in calls, some of this increase was due to an increase of public awareness and a change in society's attitude (*e.g.*, victims more certain of police assistance). Oral decision, at 8. The court emphasized that the State should not be responsible for costs due to publicity. In order to limit the LESA and patrol costs to those attributable to the "newly imposed responsibilities", the court, based on a percentage of time spent, awarded 4 percent of total costs for 1984 (the last 4 months of the year following the implementation of the act); and 12 percent for each year from 1985 through 1988. Clerk's Papers, at 256; oral decision, at 7-12.

With regard to the municipal court costs, the court allowed costs for the court commissioner's time which was actually spent on handling the petitions filed for civil protection orders (*e.g.*, assisting people in filing petitions, receiving petitions, and scheduling hearings). The court based its award on the number of petitions filed, the time

spent, and the commissioner's salary. Clerk's Papers, at 257; oral decision, at 12-14.

The 1984 act authorizes the city attorney to assist victims who cannot afford a private attorney in prosecuting criminal sanctions for violations of protective orders. The court found:

> Although the City Attorney's Office has hired additional staff and devoted considerable time to aspects of the domestic violence activities since 1984, there was inadequate evidence at the time of trial from which to ascertain by a preponderance of the evidence the dollar amount or percentage of the City Attorney's budget attributable to new levels of service required by the 1984-85 . . . legislation.

Clerk's Papers, at 257-58. Ms. McCann (a city attorney), testified at trial there is no one in the office to handle such matters and so she did not advise victims of this particular right. Oral decision, at 14-15. Therefore, the court denied the city attorney's costs.

The court therefore ordered the State to reimburse the City for the following costs:

| | |
|---|---:|
| A. Domestic Violence Unit | $301,445 |
| B. Jail Costs | 125,375 |
| C. Identification Costs | 12,891 |
| D. LESA and Patrol Costs | 107,383 |
| E. Municipal Court | 33,717 |
| F. City Attorney | -0- |
| TOTAL | $580,811 |

■ The proper measure for determining damages pursuant to RCW 43.135 is to reimburse those costs which are a direct result of the legislation imposing new programs and/or increased levels of service. In *State v. Howard, supra,* we stated: "The public benefit must be measurable or quantifiable or RCW 43.135 will not apply." 106 Wn.2d at 43. In the present case, the trial judge made every effort to consider only those costs which were measurable or quantifiable, and which were supported by a preponderance of the evidence. He awarded damages only through December 31, 1988, he adjusted baselines, he reduced certain costs to 20 percent, and he did not award

any costs for the city attorney. He took into account changing societal attitudes. He weighed all of the evidence and limited the City's damages to those costs specifically attributable to the 1984 and 1985 acts. There is substantial evidence to support the Superior Court's judgment.

The Domestic Violence Prevention Act constitutes a "new program" and an "increased level of services" within the meaning of RCW 43.135. The State must reimburse the City for the costs directly resulting from the act. We affirm both the summary judgment and the trial judgment.

BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

DORE, C.J. (dissenting) — The City of Tacoma claims that RCW 43.135 entitles it to reimbursement for costs it incurred complying with the Domestic Violence Prevention Act of 1984. The majority concludes that the City is entitled to reimbursement under RCW 43.135 for measurable, quantifiable costs that are the result of the 1984 act. I dissent because I do not believe that the Domestic Violence Prevention Act of 1984 imposed "new programs or increased levels of service" on the City of Tacoma.

In *Seattle v. State*, 100 Wn.2d 16, 24, 666 P.2d 359 (1983) and *State v. Howard*, 106 Wn.2d 39, 43, 722 P.2d 783 (1985) we conclude that the terms "programs" and "service", as used in RCW 43.135, are synonymous and that they "denote measures designed to accomplish specific public goals and to benefit the public." We warn that the public benefit from a legislatively imposed program or increased level of service must be "measurable or quantifiable" or RCW 43.135 would not apply. *Howard*. Similarly, if the Legislature only modifies the internal procedures of an existing program, to render more efficient the same level of service, then the taxing district is

not entitled to reimbursement. *Seattle v. State*, 100 Wn.2d at 25. And, even if the taxing authority changes the type of service it offers the public, the authority is not entitled to reimbursement unless the change increases the level of services overall. *Seattle v. State, supra.*

The City proposes that the "new" definition of "domestic violence" contained in the 1984 Domestic Violence Prevention Act increased the level of service offered to the public. The definition of "domestic violence" contained in the Domestic Violence Prevention Act of 1984, however, includes no more than the conduct described in the domestic violence act of 1979. The 1979 act lists illustrative crimes that fall within the scope of "domestic violence", but it also states that this list is not exclusive: " 'Domestic violence' includes *but is not limited to* any of the following crimes." (Italics mine.) RCW 10.99-.020(2). Thus, the definition in the 1984 Domestic Violence Prevention Act only repeats in more general language what the 1979 act already encompassed. *Compare* RCW 10.99.020(2) *with* RCW 26.50.010(1).

The City argues that the 1984 act expands the rights of victims of domestic violence. Under either the 1979 act or the 1984 act, the right of the victim is the same. The victim is entitled to maximum protection from abuse and impartial enforcement of the law against an aggressor, regardless of whether the aggressor is a member of the victim's family or household. RCW 10.99.010.

Similarly, the "expansion of advice given to victims" does not constitute a new program or increased level of service. The 1979 act required peace officers to cooperate with community service organizations with expertise in domestic violence, protect victims of violence, and "offer, arrange, or facilitate" victims' access to medical treatment or to safe shelter. RCW 10.99.030(1), (2), (5). The 1984 act directs the officer to "advise the victims of all reasonable means to prevent further abuse, including advising each person of the availability of a shelter or other services in the community." RCW 10.99.030(4). Protecting victims of

violence encompasses advising them of means to prevent further violence or other services and both provisions require that the officer advise victims of shelter. The 1984 act only clarifies a duty imposed by the 1979 act; it does not quantifiably increase the level of service overall.

The City claims that the issuance and enforcement of no-contact orders constitute a new program or increased level of service. Under the 1979 act, however, the court could prohibit the defendant from contacting his victim to protect the victim and prevent further aggression. Laws of 1979, 1st Ex. Sess., ch. 105, § 4(2). Moreover, the 1979 act made the violation of such orders a misdemeanor. The more explicit language of the 1984 act only modified the procedures to be followed when implementing a duty created in 1979. RCW 10.99.040(2), (3), (4).

The City argues that entering no-contact orders into a computer based criminal intelligence information system, as required by the 1984 act, is a new program or level of service. RCW 10.99.040(5). Under the 1979 act, the victim received a copy of the no-contact order, and peace officers and enforcement agencies made complete reports and maintained records of any reported violations of the order. Laws of 1979, 1st Ex. Sess., ch. 105, § 3(3)(b), (5), (6); § 4(2). Effectively, the computer recordkeeping that the 1984 act requires modifies internal procedure and makes more efficient an existing program or level of service.

Amendment of the domestic violence act, making arrest mandatory when an officer believes a crime of domestic violence has been committed, does not impose a new program or service on a taxing authority. The 1979 act authorized peace officers to arrest *whenever* they had probable cause to believe a crime had been committed. Laws of 1979, 1st Ex. Sess., ch. 105, § 3(3)(a). The mandatory language of the 1984 act only makes more explicit what the 1979 act permitted.

The City alleges that the new civil remedy that the 1984 act created, the petition for an order for protection, is a new program or level of service. RCW 26.50.030. The

plan in this case involves coordination of enforcement agencies and the judicial system to protect victims of domestic violence. The creation of civil procedures or a remedy is a modification of the means available to achieve that goal. The remedy and procedures merely "streamline and render more efficient", 100 Wn.2d at 25, the means by which a victim may gain the "maximum protection from abuse" that the 1979 act contemplates. RCW 10-.99.010. Because I do not believe that the requirements of the 1984 act constituted a "new program" or imposed an "increased level of services" on the City, I would reverse the trial court and deny the request for reimbursement.

Finally, courts may take judicial notice of any public statute of this state. *Gross v. Lynnwood*, 90 Wn.2d 395, 397, 583 P.2d 1197, 96 A.L.R.3d 187 (1978). Appellate courts may also take judicial notice of "facts capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy and verifiable certainty." *Tyler Pipe Indus. v. Department of Rev.*, 96 Wn.2d 785, 796, 638 P.2d 1213 (1982) (quoting *State ex rel. Humiston v. Meyers*, 61 Wn.2d 772, 779, 380 P.2d 735 (1963)). I take judicial notice of RCW 82.14, which governs the allocation of sales and use tax revenues to cities and counties. The Legislature amended the act in 1984, to more equitably distribute revenues from the sales and use tax equalization account. Laws of 1984, ch. 225, § 1. Under the act, as amended, cities and towns receive their share of the state sales tax from the Department of Revenue and pay none of the collection expenses. Such collection expenses are absorbed by the State. When the cities and towns sought a share of the state sales tax it was represented to the Legislature that such funds would be used to pay for obligations and duties imposed by the Legislature by the passage of various laws. Since 1984, the cities and towns' share of the sales tax has increased because of the increase in retail sales. Records of the Department of Revenue show that the City of Tacoma

received the following sales and use tax revenues from 1984 through 1988:

| | |
|---|---|
| 1984 | $7,930,226.92 |
| 1985 | $8,218,626.75 |
| 1986 | $8,414,835.13 |
| 1987 | $9,189,212.53 |
| 1988 | $10,015,494.01 |

It is readily apparent that the City's revenues increased more than $2 million after 1984 and it received total revenues of $45,768,395.34 during 1984 through 1988. This money was available to the City of Tacoma to meet any cost it incurred complying with the Domestic Violence Prevention Act of 1984. The revenue the City accepted would more than cover either the $2 million that the City alleged it spent complying with the 1984 act, or the $580,811 the court awarded it.

I would reverse the trial court and dismiss.