FILED
COURT OF APPEALS
DIVISION II

2015 JUN 16 AM 8: 30

STATE OF WASHINGTON

BY

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| ALLYAH JASEM SALIM AYESH, | No. 46004-1-II |
| Respondent, | |
| v. | |
| JONATHAN MICHAEL BULLIS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. – Jonathan M. Bullis appeals the domestic violence protection order issued against him, arguing that the evidence was insufficient to support the order's issuance. Because substantial evidence supports the superior court commissioner's findings that Bullis placed the victim in fear of imminent physical harm and that domestic violence occurred, we affirm the one-year protection order.

## FACTS

Bullis and Allyah Ayesh were involved in a romantic relationship from July 2012 until December 2013.[1] After the two had an argument in Bullis' apartment on December 1, 2013, Bullis knocked their Christmas tree down. As Ayesh prepared to leave the apartment, she looked over at Bullis and saw him huddled with a gun to his head. The two struggled for the gun, and Ayesh took it from Bullis. Ayesh then took two additional firearms from the apartment and went to stay with her sister.

---

[1] Contrary to the allegation in Ayesh's appellate brief, the declaration containing this information was part of the record below. Report of Proceedings (RP) at 6, 32-33, 98, 120.

On the night of December 8, Bullis sent Ayesh approximately 150 text messages in which he threatened to harm himself. She replied with a single text on December 9, asking Bullis to stop contacting her because their relationship was over. Approximately 30 minutes later, he drove over to her sister's house and demanded his firearms. He refused to leave despite repeated requests from Ayesh's sister and brother-in-law, so Ayesh called 911. Bullis was taken to the hospital for a mental health evaluation and released. On the evening of December 10, the information on Ayesh's cell phone was erased.

On December 11, Ayesh filed a petition seeking a protection order against Bullis. Ayesh alleged in the petition that she ended her relationship with Bullis after he threatened suicide by putting a gun to his head, and that she had feared for her life while the two struggled for the gun. She added that after she received an excessive number of texts from Bullis, she asked him to stop contacting her, whereupon he came to her residence and refused to leave. Ayesh also stated that the information on her phone had been accessed and erased without her permission. Finally, she noted that Bullis had thrown the Christmas tree, downloaded a tracking device on her phone, and threatened to break the glasses on her face.

The commissioner issued temporary protection orders until the petition could be heard. At the hearing, Ayesh testified that she felt threatened for her own safety during the struggle for the gun, explaining that the gun once was pointed at her abdomen. Ayesh also testified that the number of texts from Bullis made her "very afraid" and that her fear of Bullis was ongoing. Report of Proceedings (RP) at 15. Her sister testified that Ayesh was terrified when she came to stay on December 1 and that the subsequent texts also upset her. She added that Ayesh was still afraid of Bullis.

2

Bullis testified that he knocked the Christmas tree over in frustration and acknowledged that he and Ayesh had struggled over his firearm. He denied threatening Ayesh but admitted sending her approximately 150 texts with "extreme language" in an attempt to get her attention. Clerk's Papers at 31. He also testified that the mental health professionals who evaluated him did not find that he presented a danger to anyone. Bullis denied erasing the contents of Ayesh's phone, and his mother testified that she had possession of Bullis' phone when the information on Ayesh's phone was erased.

After each party presented closing argument, the commissioner outlined the allegations in the petition. The commissioner found that Ayesh's allegations about Bullis' phone tracking and his threat to break her glasses were unfounded. The commissioner then found that although the parties disagreed about the details surrounding the struggle over the firearm, they agreed that such a struggle had occurred:

> What is clear and what has been proven by preponderance of the evidence is that there was a struggle. What is clear from the admissions of Mr. Bullis is that it involved a firearm, again something that I must be aware of in terms of increasing danger during an argument. Firearms simply should not be a part of an argument. And it is clear that you broke a Christmas tree.

RP at 120. The commissioner then turned to a discussion of the text messages:

> The text messages that were described actually repeatedly by counsel as childish, I don't believe that is the correct word for the nature of these text messages. I believe the correct word for these text messages is frightening, disturbing, suicidal. They continued even after there was a request to stop. They were excessive. They were battering. You testified today that they were to elicit a response, any response.

RP at 120-121.

3

Although Ayesh had not been able to establish that Bullis erased the contents of her cell phone, the commissioner found that this event explained why she filed the petition: "She is getting more and more scared. There are text messages, and then her phone gets erased completely around midnight. That explains why she came in on the date that she came in." RP at 121. The commissioner addressed Bullis in concluding as follows:

> [T]he actions that you took were absolutely frightening, threatening, intimidating, and though there is no overt threat to kill her, no intent on your part—and I believe you when you testify that you had no intent to cause her to fear for her life. You did cause her to fear for her life with your actions by bringing a firearm into an argument, by breaking the Christmas tree, by bombarding her with a barrage of text messages that vacillate from romantic to frightening to suicidal. That is domestic violence.

RP at 122. The commissioner entered a one-year domestic violence protection order. Bullis now appeals, arguing that the evidence was insufficient to support the commissioner's finding that his actions constituted domestic violence.

## ANALYSIS

We review the findings supporting a protection order for substantial evidence, and we review the decision to issue a protection order for abuse of discretion. *Scott v. Trans-Sys., Inc.*, 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003); *Hecker v. Cortinas*, 110 Wn. App. 865, 869, 43 P.3d 50 (2002). "Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the asserted premise." *Snyder v. Haynes*, 152 Wn. App. 774, 779, 217 P.3d 787 (2009). A court abuses its discretion when its decision is "manifestly unreasonable, or based on untenable grounds." *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). We defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony. *State v. Ainslie*, 103 Wn. App. 1, 6, 11 P.3d 318 (2000).

4

Chapter 26.50 RCW authorizes the issuance of a protection order if the party seeking it alleges "the existence of domestic violence and . . . [declares] the specific facts and circumstances from which relief is sought." RCW 26.50.030(1); *Hecker*, 110 Wn. App. at 869. Domestic violence includes "the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." RCW 26.50.010(1)(a). Because an order for protection is a civil remedy, it must be supported by a preponderance of the evidence. *Reese v. Stroh*, 128 Wn.2d 300, 312, 907 P.2d 282 (1995); *City of Tacoma v. State*, 117 Wn.2d 348, 351-52, 816 P.2d 7 (1991). This standard required the commissioner to find that it was more likely than not that domestic violence occurred. *Freeman v. Freeman*, 169 Wn.2d 664, 673, 239 P.3d 557 (2010).

Bullis argues that the evidence was insufficient to show that he placed Ayesh in fear of imminent physical harm and that the commissioner erred in finding the existence of domestic violence. He maintains that he never attempted to injure Ayesh during their struggle over his firearm. Bullis also contends that he knocked the Christmas tree over in fatigue and frustration but not in an attempt to harm Ayesh. He argues further that although the texts he sent may have constituted harassment, they did not show that he placed Ayesh in fear of imminent physical harm. Bullis argues further that the commissioner erred in disregarding the medical and psychiatric findings that he presented no danger to Ayesh.

The fact that Bullis was released after his mental health evaluation does not demonstrate that he did not place Ayesh in fear of physical harm. Both Ayesh and her sister testified that Bullis' actions made Ayesh fear for her own personal safety. The credibility of these witnesses is not reviewable by this court. *Spence v. Kaminski*, 103 Wn. App. 325, 333, 12 P.3d 1030 (2000).

In addition to considering the testimony from Ayesh and her sister, the commissioner reviewed Bullis' many text messages and described them as frightening and disturbing.[2] Other evidence showed that Bullis came to Ayesh's residence after she asked him to stop contacting her and would not leave when told to do so. As the trial court observed, Bullis succeeded in placing Ayesh in fear for her physical safety whether he intended to or not. We conclude that the commissioner's findings that Bullis placed Ayesh in fear of imminent harm and engaged in domestic violence are supported by a preponderance of the evidence and affirm the protection order.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Maxa, J.

---

[2] Exhibit 2, which contained these messages, is not part of the appellate record.