98 P.3d 1264 (2004)
Katina PERRY and Paul Perry, Respondents,
v.
COSTCO WHOLESALE, INC., Appellant.
No. 52454-2-I.
Court of Appeals of Washington, Division 1.
October 18, 2004.
*1266 Steven Hill Winterbauer, Attorney at Law, Adam Graham Cuff, Attorney at Law, Seattle, WA, for Appellant.
Judith A. Lonnquist, Law Offices of Judith A. Lonnquist, P.S, Seattle, WA, for Respondent.
COX, C.J.
Costco Wholesale, Inc. appeals an adverse judgment based on Katina Perry's sexual harassment hostile work environment claim under the Washington Law Against Discrimination ("WLAD"), chapter 49.60 RCW. We hold that substantial evidence supports the findings of fact that are critical to the conclusions of law supporting the judgment. And the trial court properly awarded additional relief to cover adverse tax consequences arising from the damages award, pursuant to RCW 49.60.030(2). As to Perry's cross-appeals, we hold that the trial court did not abuse its discretion by declining to impose monetary sanctions in addition to other sanctions for a CR 26(g) discovery violation. Finally, the trial court abused its discretion when it considered the proportionality of the requested fee when it declined to apply a lodestar multiplier to Perry's request for attorney fees. We affirm in part, reverse in part, and remand with instructions for further proceedings.[1]
Perry worked for Costco in its Optical Lab in Tukwila. Greg Smith was a non-supervisory co-worker on the same shift and a friend of Perry's husband, who also worked for Costco. Following her husband's transfer to another Costco location, Smith began to make inappropriate sexual comments and gestures toward Perry. Smith would comment on an almost weekly basis on the size of his tongue in relation to sexual acts and then stick out his tongue at Perry. Smith also placed a phallic-shaped item on her desk. Smith told Perry she had a "nice butt" and that she was "slacking" because she was not wearing thong underwear. Perry had also witnessed Smith's inappropriate behavior with other female coworkers. She did not immediately report any of these events to Costco.
At 4:00 a.m. one morning on an undetermined date in February or March 2000, after her shift ended, Perry saw Smith speaking with a female co-worker in the parking lot. She drove toward him to talk to Smith about an invitation he earlier extended to a barbeque. By the time she reached him, the female co-worker was walking away, and Smith's pants were pulled down, exposing him to Perry. Shocked, Perry asked him what he was doing. He said he was feeling crazy because of the full moon. Perry told him she was leaving, and Smith said that she better before he threw her in the back of her truck and "had his way with her." Feeling threatened, she quickly departed.
Perry was reluctant to report this incident to Costco until she first told her husband. But she delayed telling him because she was *1267 afraid he would physically assault Smith and because Perry and her husband were undergoing considerable domestic stress. Perry finally told her husband. Immediately thereafter, on May 8, 2000, Perry reported the incident to her shift supervisors Tracy Whisman and Scott Tanner.
Costco commenced an investigation, suspending Smith for three days during that investigation. Costco interviewed other women Perry identified as victims of Smith's sexual harassment. It also interviewed Smith, who denied the claims of sexual harassment. The lab manager, Michael Jorgensen, concluded that Smith's denial of the exposure and other inappropriate behavior was not credible. He concluded that Smith's actions violated company policy and recommended that Costco fire Smith. Costco Vice President John Osterhaus disagreed. He concluded that Costco could not confirm Perry's claims. However, Costco transferred Smith to the day shift in lieu of firing him. It also required him to attend three hours of sensitivity training and sign a Contract for Continued Employment, which conditioned his employment on completion of the training.
Perry was angry when Costco informed her of its decision in response to her complaint about Smith. She considered the response inadequate. Costco did not offer Perry either counseling or a transfer out of the Tukwila lab. She asked Tanner numerous times to transfer her to the Federal Way warehouse because she was uncomfortable with her intermittent contact with Smith at the Tukwila lab. Tanner failed to do so. Perry then completed the paperwork to initiate the transfer herself, and Costco transferred her to the Federal Way warehouse in July 2000.
Between January and August 2001, Perry saw Smith at the Federal Way warehouse four times. Each time they made eye contact, Smith glared at her. Each time Perry observed Smith, she informed a manager. They told her there was nothing Costco could do to keep Smith out of the store. After one such incident, Perry and a store manager checked Smith's shopping history and discovered that his activity at that store was "very low."
A manager at the Federal Way store informed Jorgenson of Perry's objection to Smith's presence in the store. Jorgenson told Smith to stay away from Perry and the Federal Way warehouse.
Perry sued Costco, claiming sexual harassment and retaliation in violation of the WLAD and discharge in violation of public policy. Following a bench trial, the judge dismissed Perry's retaliation and public policy discharge claims, but entered judgment for Perry on her sexual harassment hostile work environment claim. The trial court also awarded Perry attorney fees and relief for adverse tax consequences pursuant to RCW 49.60.030(2).
Costco appeals, and Perry cross appeals.

SEXUAL HARASSMENT
Costco assigns error to most of the trial court's findings of fact and conclusions of law. As we read the assignments of error, Costco identifies the principal issues for review as (1) whether Costco had constructive notice of Smith's alleged harassment before May 8, 2000 when Perry reported it to management (2) whether Costco failed to take reasonably prompt and adequate corrective action, and (3) whether the relief for adverse tax consequences arising from the award of damages and attorney fees was proper. We direct our attention primarily to those assignments of error that Costco supports with persuasive argument and citation to authority and the record.[2]
WLAD prohibits employment discrimination based on sex.[3] Sex discrimination *1268 includes sexual harassment that "unfairly handicaps an employee against whom it is directed in his or her work performance and as such is a barrier to sexual equality in the workplace."[4] The elements of a hostile work environment sexual harassment claim are: (1) unwelcome conduct, (2) based on sex, (3) affecting the terms and conditions of employment, and (4) imputed to the employer.[5] To impute liability to an employer for a discriminatory work environment created by an employee's coworker, the employee must show:
... (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the work place as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment.[6]
Where the trial court has weighed the evidence, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law.[7] Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise.[8] Perry is "... entitled to the benefit of all evidence and reasonable inference therefrom in support of the findings of fact entered by the trial court."[9] Unchallenged findings are verities on appeal.[10] This court reviews conclusions of law de novo.[11]

Notice
We need not address Costco's first principal issue for reviewwhether it had constructive notice of Smith's inappropriate, harassing behavior prior to Perry's May 8, 2000 complaint. Assuming without deciding that Costco did not have such constructive notice, it is undisputed that Costco had actual notice on May 8, 2000 of Perry's sexual harassment complaint. Thus, we move to the second principal issue that Costco raiseswhether it took prompt and effective remedial action following Perry's complaint.

Prompt and Effective Remedial Measures
Once an employer has actual knowledge through higher managerial or supervisory personnel of a complaint of sexual harassment, then the employer must take remedial action that is reasonably calculated to end the harassment.[12] Costco contends that the trial court erred by deciding that Costco failed to take reasonably prompt and effective action to end the sexual harassment of Perry.
There is little state authority on how to apply this criterion under the WLAD.[13] *1269 However, interpretations of Title VII of the Civil Rights Act of 1964, while not binding in interpretation of the WLAD, are instructive.[14] We turn to case authority under that federal law to assist here.
Ellison v. Brady[15] articulates the standard that we conclude is applicable to this WLAD case:
An employer's remedy should persuade individual harassers to discontinue unlawful conduct. ... [N]ot ... all harassment warrants dismissal, rather, remedies should be assessed proportionately to the seriousness of the offense. Employers should impose sufficient penalties to assure a workplace free from sexual harassment.... [T]he reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in the harassment. In evaluating the adequacy of the remedy, the court may also take into account the remedy's ability to persuade potential harassers to refrain from unlawful conduct. ... [M]eting out punishments that do not taken into account the need to maintain a harassment-free working environment may subject the employer to suit....[16]
"Effectiveness will be measured by the twin purposes of ending the current harassment and deterring future harassment-by the same offender or others. If 1) no remedy is undertaken, or 2) the remedy attempted is ineffectual, liability will attach."[17] Repeat conduct may show the unreasonableness of prior responses.[18] The fact the harassment never happens again is proof that the employer's response was reasonable and adequate as a matter of law.[19]
The United States Equal Employment Opportunity Commission has noted:
When an employer receives a complaint or otherwise learns of alleged sexual harassment in the workplace, the employer should investigate promptly and thoroughly. The employer should take immediate and appropriate corrective action by doing whatever is necessary to end the harassment, make the victim whole by restoring lost employment benefits or opportunities, and prevent the misconduct from recurring. Disciplinary action against the offending supervisor or employee, ranging from reprimand to discharge, may be necessary. Generally, the corrective action should reflect the severity of the conduct.[20]
Costco challenges the findings of fact and conclusions of law related to the trial court's decision that Costco failed to take reasonably prompt and effective action designed to end the sexual harassment. Specifically, it contends its investigation was satisfactory and its remedial actions prompt and effective. For the reasons we discuss below, this argument is unpersuasive.
Costco's argument largely rests on the premise that it lacked constructive notice of Smith's sexual harassment in the workplace prior to Perry's May 8, 2000 complaint. But we have already explained that regardless of whether it had constructive knowledge prior to that date, it had actual knowledge of the problem on that date. Thus, the question is whether it took prompt and effective remedial action once it had actual knowledge of the allegations of illegal activity in the workplace.
Viewed in this manner, we acknowledge that Costco took prompt action after receiving *1270 actual notice. It initiated an investigation, suspending Smith for three days while it investigated. But a prompt investigation of complaints such as this does not end the inquiry. Rather, that represents only part of the employer's duty under the law.
Again, federal case authority provides guidance to us:
Notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is reasonably calculated to end the harassment. This obligation actually has two parts. The first consists of the temporary steps the employer takes to deal with the situation while it determines whether the complaint is justified. The second consists of the permanent remedial steps the employer takes once it has completed its investigation.[21]
Thus, the basic question is not whether an investigation is either prompt or adequate. Rather, the question is whether the remedial action by the employer is effective. While the law does not require that investigation into sexual harassment complaints be perfect, it does require that remedial action be "reasonably calculated to prevent further harassment."[22]
In stating the role of an investigation as part of remedial action, we do not intend to diminish the importance of a proper investigation. For example, an investigation that negligently fails to discover harassment such that the remedy the employer chooses is inadequate may be a basis for a determination that the employer failed to take remedial action that was reasonably calculated to end future harassment.[23] Thus, employers who fail to establish protocols to ensure careful and complete investigations of sexual harassment complaints run the risk of liability for failing to take effective remedial action.
With this analytical framework in mind, we turn to an examination of the challenges that Costco makes to the trial court's decision that its remedial actions were inadequate. Does substantial evidence support the essential findings and do those findings support the conclusion that the remedial action was not reasonably calculated to end the sexual harassment?
The trial court found that Perry's testimony was credible as to all material facts and that the evidence does not support Costco's contention that she fabricated either the harassment or her injuries. We do not review credibility determinations by the trier of fact.[24] If we assume, for purposes of argument as Costco urges, that its investigation following actual notice was adequate, we then look at what Costco knew at the time it completed its investigation. According to its own investigation, a number of female employees reported to investigators that Smith had subjected them to an extensive history of sexual commentary, innuendo, and touching. The investigator reported that Smith "seems to have done this for quite a while and gotten away with it." Moreover, Costco interviewed two witnesses who allegedly verified that Smith had admitted exposing himself to Perry in the parking lot, just as Perry reported. Costco also knew the details about the alleged parking lot incident. According to Perry, Smith exposed himself to her and commented he was "feeling crazy." He then approached the truck she was sitting in and threatened to sexually assault her. Finally, Costco knew that Perry felt threatened and asked it to separate her from Smith because of these events.
In response, Costco decided there was no real proof of Smith's conduct, rejected the recommendation by Smith's supervisor that he be fired, and transferred him to the day shift. The company also gave him verbal and written counseling notices and sent him *1271 to sensitivity training. At the same time, the company declined to act on Perry's request to transfer her until she initiated formal action following the company's failure to honor her multiple informal requests. And Costco did not offer Perry any counseling.
After careful review of the record, we conclude that substantial evidence supports the factual findings the trial court made to support its conclusions of law. While the company was free to reject the recommendation of Jorgensen and choose not to fire Smith, its remedial actions were not reasonably calculated to end the harassment either by Smith or by other potential harassers. The trial court found that "a number of individuals . . . reported an extensive history of sexual commentary, innuendo and touching by Greg Smith." In addition, Jorgenson noted that Smith "... seems to have done this for quite a while and gotten away with it." In view of the seriousness of the claim of exposure and threatened sexual assault in the parking lot, among other things, the trial court had ample reason to conclude that the remedial measures did not discharge Costco's duty to Perry.
Costco assigns error to the trial court's findings of fact and conclusions of law to the extent they characterize its remedial actions as ineffective because Smith continued to victimize Perry and engage in inappropriate behavior after his transfer to the day shift. Substantial evidence supports these findings and the conclusions of law that flow from them.
Costco challenges findings of fact 29,[25] 30,[26] 31,[27] and 38[28] concerning Smith's continued harassment of Perry. Substantial evidence supports these findings.
Perry, a witness the trial court expressly found as credible, testified substantially as stated in the trial court's finding of fact 29 concerning the sequence of events, her attempts to get management to exclude Smith from the Federal Way warehouse, and management's response to these requests. Perry also testified that she and a manager looked up Smith's shopping history at the Federal Way store and found that his shopping history was "very low" for that store. Jorgenson testified that he told Smith to stay away from Perry and the Federal Way warehouse.
Nevertheless, Costco contends that the four instances of staring could not constitute sexual harassment and relies on Swenson for this proposition. Swenson is distinguishable. There, the victim continued to work in the same building as the harasser and her contact with him involved sixteen "sightings" over the course of fourteen months.[29] There was no eye contact and it was reasonable *1272 that the harasser would be in there because they worked in the same building. Here, Smith did not work at the Federal Way store, had a very low shopping history, made eye contact with Perry, and glared at her menacingly.
Furthermore, Fuller also makes clear that overtly sexual behavior is not necessary to establish a hostile work environment claim and that subsequent actions of a harasser that, by themselves might not constitute harassment, may be viewed as such following extreme actions that would reasonably lead the victim to believe the harasser could do anything. In Fuller, the former boyfriend, and a fellow police officer, of the harassment victim, Fuller, subjected her to harassing telephone calls, including threatening to kill himself during one of the calls.[30] He tried to run Fuller and her new boyfriend off the road in his car.[31] He blocked her way with his car and forced her to give him her new telephone number after she had changed her number to avoid his harassing calls.[32] He also examined her personnel file to obtain her telephone number after she again changed it to avoid his harassing calls.[33] The court concluded that the first two actions were so extreme that they would reasonably cause Fuller to fear that the harasser was capable of anything such that her working environment was altered.[34]
This same reasoning is applicable here. Although the four instances of staring, considered in isolation, are not sexual harassment, following the exposure incident and Smith's threat to sexually assault her, it was reasonable that Perry's fear of Smith was heightened such that she would reasonably anticipate he was capable of doing anything during their brief encounters at the Federal Way warehouse. Thus, Smith's activities constituted continuation of the same prohibited behavior.
Costco's arguments to the contrary are unpersuasive and substantial evidence supports findings of fact 29, 30, 31, and 38.
Costco also assigns error to findings of fact 22[35] and 34[36] that it failed to assist Perry in a proactive manner. But there is no evidence in the record that Costco offered Perry counseling, a transfer, or other forms of protection from Smith. Costco concedes as much in its brief, but contends that, as a matter of law, it had no duty to engage in proactive assistance of a sexual harassment victim. Costco cites no authority to support its contention that the trial court erred by considering this factor in determining whether Costco's remedial actions were effective or whether they were a cause of additional distress to Perry. Substantial evidence supports findings of fact 22 and 34 that Costco took no affirmative steps to assist Perry in addressing her issues arising from the sexual harassment.
Costco also assigns error to findings of fact 35[37] and 36,[38] contending that substantial *1273 evidence does not support the conclusion that Smith continued to engage in sexually harassing behavior on the day shift with Katie Paull, a female coworker. Substantial evidence supports these findings.
Katie Paull, who worked on the day shift, complained that Smith was harassing her. She testified that Smith made inappropriate comments, including propositioning her for sex while grabbing himself, asking her if she wanted a mixed race baby with him, asking her to make pornography, and describing sexual acts he wanted to do to her. He also gestured to her in a sexual manner with his tongue and fingers and used a mirror to look up her skirt.
Although the trial court concluded that Paull was not the victim of sexual harassment but engaged in consensual sexual banter with Smith, this evidence illustrates the fact that Costco's remedial actions did not change Smith's inappropriate behavior. Smith's continued harassment of Perry, coupled with his inappropriate, albeit consensual, sexual banter with Paull, supports the trial court's conclusion that Costco's remedial actions were ineffective.
But Costco contends that the trial court erred as a matter of law when it considered evidence of Smith's behavior with Paull as evidence of Costco's ineffective remedial actions concerning Perry's harassment complaint. Costco's argument is ultimately unpersuasive, however, because the trial court did not rely only on Smith's inappropriate behavior with Paull. The trial court relied on Costco's inadequate response to the exposure and threat of sexual assault, Smith's continued harassment of Perry, and Smith's inappropriate behavior with Paull as evidence of Costco's inadequate remedial actions. The trial court did not err.
Costco also challenges the conclusion of the trial court that its remedial actions were legally inadequate. The trial court did not err.
Conclusion of law 8 states: "The remedial actions taken by Costco in response to Ms. Perry's sexual harassment claims were legally insufficient." Conclusion of law 9 states:
A remedy which simply transfers the sexual harasser to another shift or another location, without doing anything to prevent continued sexual harassment by the harasser, is legally insufficient under Washington law, as it does not stop the illegal conduct. It is not enough simply to stop the sexual harassment as to the plaintiff, when the harasser is left free to sexually harass others. Such a result is inconsistent with the law and the spirit of WLAD.
Costco contends that these conclusions are erroneous because Smith's harassment of Perry did stop. As noted above, Costco is mistaken. Smith continued to victimize Perry by stalking her at the Federal Way store.
Costco also contends that its remedial actions were appropriate and adequate to address Smith's harassing behavior. We disagree.
Ellison is instructive here. In Ellison, the Ninth Circuit addressed the sufficiency of an employer's remedial actions. There, Ellison was subject to harassment by a coworker, Gray, who persisted in asking her out to lunch, despite rejections, and wrote her two disturbing letters about crying over her, "experiencing" her from afar, and his hope for a more intimate relationship.[39] In response to Ellison's complaints, the employer transferred Gray to another office for six months but decided, following a union grievance procedure instituted by Gray, to transfer him back to Ellison's office.[40] The employer informed Ellison that it thought the six-month separation was sufficient and if the problem recurred, it would take additional action.[41] *1274 The Ninth Circuit concluded that genuine issues of material fact existed concerning the adequacy of these remedial measures.[42] It cited the fact that the employer apparently only told Gray to stop harassing Ellison, it failed to express strong disapproval of Gray's conduct, it did not reprimand him or put him on probation, and did not inform him that repeated harassment would result in suspension or termination.[43]
Here, after a history of sexually harassing Perry and others, Smith exposed himself to Perry and threatened to sexually assault her in the middle of the night in an empty parking lot outside the Costco facility. Costco briefly suspended Smith while it investigated. Following the investigation, Costco transferred Smith to the day shift, required him to attend three hours of counseling and sign a contract conditioning continued employment with Costco on his completion of the counseling. These remedial measures were not "assessed proportionately to the seriousness of the offense."[44] Furthermore, Costco failed completely to address Perry's concerns over Smith's continued harassing behavior after she transferred to the Federal Way warehouse and after Costco had instituted its remedial measures. Despite evidence to the contrary, more than one manager told Perry that there was nothing Costco could do to prevent Smith from harassing her at the Federal Way warehouse.
We also conclude that Costco failed to design its remedial actions to prevent harassment or send a strong statement to Smith, or others, that his behavior was inappropriate. Costco transferred Smith to the day shift as part of its remedial actions. Paull testified that Smith was "very excited" that Costco had transferred him from the night to the day shift. Although Smith's transfer to the day shift was effective in the sense that he was no longer near Perry to harass her, the underlying message sent by this action was unfortunate. Both Smith and other potential harassers could view such a transfer as something other than discipline for unlawful behavior. Just as a victim of sexual harassment should not have to work in a less desirable location or on a less desirable shift because of an employer's remedial actions,[45] the employer must also ensure that its remedial actions are not viewed as a reward for unlawful behavior.
Also, during the investigation, and after Perry had expressed her fear of Smith, Costco scheduled her to work an overlapping shift with him at the Optical Lab. When Perry protested, Costco refused to reschedule Smith and instead told Perry that she could start her shift later, which she viewed as a form of punishment. Rather than lose the hours, Perry worked the overlapping shift.
The trial court did not err when it concluded that Costco's remedial actions were legally insufficient and we affirm the judgment in this respect.

Tax Consequences
Finally, Costco challenges the trial court's findings and conclusions concerning its award to Perry of additional relief due to adverse tax consequences arising from the award of damages and attorney fees pursuant to RCW 49.60.030(2). The sole basis for the challenge is that Costco disagrees with the result this court reached in Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160.[46]
The state supreme court recently affirmed the award of additional relief, although on a different basis than that on which this court made its decision.[47] Because additional relief, *1275 although now characterized differently, is warranted in this case, we reject Costco's challenge to the trial court's award.

DISCOVERY SANCTIONS
Perry contends that the trial court abused its discretion when it declined to impose monetary sanctions for Costco's CR 26(g) discovery violation. We hold that the trial court properly exercised its discretion by declining to impose additional sanctions beyond those it ordered.
CR 26(g) requires an attorney, in responding to a discovery request, to certify after making "reasonable inquiry" that the response is: (1) consistent with the rules, (2) not interposed for any improper purpose, and (3) not unreasonable or unduly burdensome or expensive. According to the language of the Civil Rules, a violation of CR 26(g) requires the imposition of an appropriate sanction.[48] But nothing in the rules diminishes a trial court's broad discretion as to the type of sanction to impose for the violation of a discovery order or discovery rules.[49]
Here, Costco failed to produce all documents that were within the scope of a request for production of documents to which Costco did not object. The failure did not become obvious until a Costco witness was being examined six days into the trial, after the close of discovery. The court immediately ordered production of all the documents, and asked both sides to explore whether Costco produced everything. Thereafter, the court ordered a short continuance of the bench trial, depositions of Costco employees having familiarity with the newly disclosed documents, and depositions as well of Costco's trial counsel. The court also required Costco's trial counsel to execute a declaration that Costco had produced all documents requested, and directed Costco to pay Perry's expenses for being required to attend additional trial sessions. The trial court also indicated that the documents addressed a collateral matter and that there was no prejudice to Perry because of the late disclosure.
There is no indication in the record that the parties failed to follow the court's directives. Thus, we must assume that Costco and its counsel complied with the court's directives.
However, Perry later moved for the imposition of monetary sanctions. She requested the assessment of $10,000 against Costco and $15,000 against Costco's trial counsel for the failure to produce the documents earlier. The court entered orders declining to impose monetary sanctions,[50] concluding that "other remedial measures have already been taken and ... plaintiff has not been prejudiced and... plaintiff has been afforded opportunity to do discovery. . . ."
The question we must address is whether the trial court's refusal to impose monetary sanctions, in addition to the measures already taken, was an abuse of discretion. We conclude it was not.
Perry objects to the characterization of the trial court's actions as "sanctions." But the granting of a continuance is properly characterized *1276 as a sanction for CR 26(e) purposes.[51] Moreover, the other actions the court took are properly characterized as sanctions under the circumstances of this case. In light of this authority, and the absence of contrary authority, we conclude that the trial court complied with the requirements of CR 26(g).
Similarly, Perry's contention that the Civil Rules and Fisons require monetary sanctions is not persuasive. The plain wording of the rules contains no indication that monetary sanctions are mandated. Moreover, we believe that a trial court's traditional discretion in addressing and remedying discovery violations would be compromised if CR 26(g) were read to require monetary sanctions for every violation, regardless of other remedies the trial court might impose. Rather, sanctions are to be tailored to the specific situation and no greater sanction should be imposed than what is required for the particular case.
The trial court's decision to continue the trial to allow Perry to conduct additional discovery, but not impose monetary sanctions, was a reasonable response under the circumstances. The trial court found the additional documents related to a collateral matter and there was no prejudice arising from the discovery violation that was not cured by the opportunity to conduct additional discovery, including the depositions of Costco personnel and Costco's counsel. The trial court properly exercised its discretion.

ATTORNEY FEES
Perry contends that the trial court abused its discretion when it declined her request for a lodestar multiplier for her attorney fees because it improperly considered proportionality. We agree and remand for the court to exercise its discretion as to the amount of fees to be awarded without consideration of proportionality.
The trial court determines a reasonable fee by calculating the lodestar figure, which is the market value of the attorney's services calculated by multiplying the hours reasonably expended in the litigation by the reasonable rate of compensation.[52] "The lodestar may be adjusted, if appropriate to reflect either the contingent nature of the representation or the quality of the representation, provided those factors have not already been factored into the lodestar amount."[53] We review an award of fees for an abuse of discretion.[54]
The trial court awarded Perry $145,694.30 in damages, $148,945.00 in tax relief, and $213,262.12 in attorney fees, costs, and expenses. Perry requested an attorney fee multiplier of 25 percent, which the trial court denied, concluding,
3. . . . These [reasonable hourly rates] do not incorporate consideration of exceptional performance or risk of contingency;
. . .
7. Counsel's efforts led to a victorious outcome with a substantial damage award, and enforced important public policies inherent in the Washington Law Against Discrimination;
8. Plaintiff's lead counsel is highly experienced, enjoys an excellent reputation, and demonstrated excellent trial skill and ability;
9. The fee herein was entirely contingent and constituted a substantial risk to Plaintiff's *1277 attorneys that they would not recover their fees;
10. The Court does not find that a multiplier would be appropriate herein, based upon proportionality principles, to wit: that a multiplier would result in an attorney's fees award that would be disproportionate to Plaintiff's damage award.
The trial court appears to have concluded that Perry satisfied the necessary factors for a multiplier, but declined to award one based solely on considerations of proportionality. This was improper for this type of case.
The value, in the broadest sense of the term, of cases advancing civil rights is not limited to pecuniary considerations only. "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."[55] Therefore, a trial court improperly exercises its discretion when it declines to consider a multiplier in a civil rights case solely because of proportionality concerns. Accordingly, we remand this issue to the trial court for reconsideration of the requested multiplier without reference to proportionality concerns. In doing so, we express no opinion as to the proper outcome following the trial court's exercise of discretion.
Finally, Perry requests attorney fees on appeal pursuant to RCW 49.60.030(2) and RAP 18.1. As the prevailing party, Perry is entitled to those fees.[56] We direct the trial court to determine the proper amount of appellate fees, as well, on remand.
We affirm in part, reverse in part, and remand for a determination of attorney fees consistent with this opinion.
We concur: COLEMAN, J., and ELLINGTON, Acting C.J.
NOTES
[1] We deny Costco's motion to strike portions of Perry's Responsive Brief in Costco's Appeal and Opening Brief in Perry's Cross-Appeal. RAP 10.3(a)(4) does require references to the record for each factual statement in the brief. But our review of the record and the briefs has not been substantially affected by these omissions. See e.g., State v. Olson, 126 Wash.2d 315, 322-23, 893 P.2d 629 (1995) (reaching the merits notwithstanding technical violations of the Rules of Appellate Procedure).
[2] See State v. Johnson, 119 Wash.2d 167, 171, 829 P.2d 1082 (1992) (we will not review an issue raised in passing or unsupported by authority or persuasive argument).
[3] RCW 49.60.180(3).
[4] Francom v. Costco Wholesale Corp., 98 Wash. App. 845, 852-53, 991 P.2d 1182, review denied, 141 Wash.2d 1017, 10 P.3d 1071 (2000) (quoting Glasgow v. Georgia-Pacific Corp., 103 Wash.2d 401, 405, 693 P.2d 708 (1985)).
[5] Francom, 98 Wash.App. at 853, 991 P.2d 1182 (citing Glasgow, 103 Wash.2d at 406-07, 693 P.2d 708).
[6] Glasgow, 103 Wash.2d at 407, 693 P.2d 708.
[7] City of Tacoma v. State, 117 Wash.2d 348, 361, 816 P.2d 7 (1991).
[8] Fred Hutchinson Cancer Research Ctr. v. Holman, 107 Wash.2d 693, 712, 732 P.2d 974 (1987).
[9] Mason v. Mortgage America, Inc., 114 Wash.2d 842, 853, 792 P.2d 142 (1990) (citation and internal quotations omitted).
[10] Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808, 828 P.2d 549 (1992).
[11] Bingham v. Lechner, 111 Wash.App. 118, 127, 45 P.3d 562 (2002), review denied, 149 Wash.2d 1018, 72 P.3d 761 (2003).
[12] Glasgow, 103 Wash.2d at 407, 693 P.2d 708.
[13] See e.g., Francom, 98 Wash.App. at 857, 991 P.2d 1182 (noting that an employer is required to take whatever action is reasonably likely to prevent further harassment and proof of the adequacy of this response as a matter of law exists where harassment never again occurs.)
[14] Glasgow, 103 Wash.2d at 405, n. 2, 693 P.2d 708.
[15] 924 F.2d 872 (9th Cir.1991).
[16] Ellison, 924 F.2d at 882 (internal quotations and citations omitted) (emphasis added).
[17] Fuller v. City of Oakland, 47 F.3d 1522, 1528-29 (9th Cir.1995) (citations omitted).
[18] Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10th Cir.1998).
[19] Francom, 98 Wash.App. at 857, 991 P.2d 1182.
[20] U.S. Equal Employment Opportunity Commission, Policy Guidance on Current Issues of Sexual Harassment, (March 19, 1990) http://www.eeoc.gov/policy/docs/currentissues.html (last visited July 31, 2004).
[21] Swenson v. Potter, 271 F.3d 1184, 1192 (9th Cir.2001).
[22] Knabe v. Boury Corp., 114 F.3d 407, 412-13 (3rd Cir.1997) (citing Ellison, 924 F.2d at 882).
[23] Knabe, 114 F.3d at 414.
[24] Morse v. Antonellis, 149 Wash.2d 572, 574, 70 P.3d 125 (2003).
[25] "After Ms. Perry moved to the Federal Way warehouse, Smith began to stalk her there. On at least four occasions in 2001, he showed up at Ms. Perry's workplace, made a point of being seen by her, and then stared at her menacingly. She reported to various managers that Smith was coming into the warehouse to harass or retaliate against her. She asked them to find a way to keep Smith out of the warehouse. Her managers told her that there was nothing that Costco could do and advised her to go to the police or to get a personal restraining order against him. Costco's inaction also contributed significantly to Ms. Perry's emotional distress."
[26] "Mr. Smith's stalking of Ms. Perry constitutes a continuation of the harassment in which he engaged at the Tukwila Lab. It reasonably can be inferred that there was no legitimate reason for Mr. Smith to be at the Federal Way warehouse, especially since there was a warehouse in close proximity to his place of work in Tukwila. The fact that Mr. Jorgenson scolded Mr. Smith for even going into the Federal Way store establishes that Costco knew that Smith was continuing his harassment of Ms. Perry. Nonetheless, Costco did nothing, but should have."
[27] "Mr. Smith's shopping history establishes that there was no record of purchases or shopping activity by him on the dates on which he visited the Federal Way warehouse, and accordingly, there was no legitimate reason for him to be there. Costco failed to introduce any evidence to rebut this testimony."
[28] "Rather than construe Smith's stalking behavior at the Federal Way warehouse as retaliatory, it is more accurately characterized as evidence of Costco's failure to protect Ms. Perry and failure to fashion appropriate remedial measures to prevent Mr. Smith's continuing harassment of her."
[29] Swenson, 271 F.3d at 1195.
[30] Fuller, 47 F.3d at 1525.
[31] Fuller, 47 F.3d at 1525-26.
[32] Fuller, 47 F.3d at 1525.
[33] Fuller, 47 F.3d at 1525.
[34] Fuller, 47 F.3d at 1528.
[35] "When Costco told Ms. Perry of the outcome, she was devastated and angry. She was justifiably concerned about working in the same building with Smith. She was not offered counseling, she was not offered a transfer, she was offered no protection from Smith. It was reasonable for Ms. Perry to be distressed by Costco's failure to take prompt and effective remedial action."
[36] "Costco made no effort proactively to protect Ms. Perry. Although it was Costco's responsibility to eliminate Smith's harassment, Costco inappropriately shifted the burden to Ms. Perry to come up with solutions, conduct any follow-up, make telephone calls and contact people to seek redress."
[37] "At all relevant times, Smith continued to contribute to a hostile working environment of female co-workers, including Katie Paull. Inter alia, the continuation of sexually harassing behavior by Smith establishes that Costco's prior remedial action was inadequate to remedy his inappropriate behavior."
[38] "Even after events of May 2000, sexual banter and behavior continued to be pervasive and ongoing at the Optical Lab. A reasonable inference from the evidence was that many of the employees on the day shift simply resigned themselves to having to put up with it rather than to report it, much as Ms. Perry had done with respect to the harassment she experienced on the night shift, until Smith exposed himself to her."
[39] Ellison, 924 F.2d at 873-74.
[40] Ellison, 924 F.2d at 874.
[41] Ellison, 924 F.2d at 874.
[42] Ellison, 924 F.2d at 882-83.
[43] Ellison, 924 F.2d at 882.
[44] See Ellison, 924 F.2d at 882.
[45] Ellison, 924 F.2d at 882.
[46] 114 Wash.App. 80, 55 P.3d 1208 (2002), affirmed in part and reversed in part, 149 Wash.2d 1010, 69 P.3d 875 (2003).
[47] Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160, 151 Wash.2d 203, 87 P.3d 757 (2004).
[48] CR 26(g) ("If a certification is made in violation of the rule, the court ... shall impose ... an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney fee.") (emphasis added); contra Panorama Village Homeowners Association v. Golden Rule Roofing, Inc., 102 Wash.App. 422, 10 P.3d 417, review denied, 142 Wash.2d 1018, 16 P.3d 1266 (2001) (affirming trial court's decision not to impose sanctions for CR 26(g) discovery violation).
[49] Burnet v. Spokane Ambulance, 131 Wash.2d 484, 494, 933 P.2d 1036 (1997); Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 355, 858 P.2d 1054 (1993).
[50] The court entered two orders, the first of which is dated May 9, 2003. The court apparently entered by mistake a second order on the same motion. That order is dated May 13, 2003 and was vacated by the court's order dated July 13, 2003. Although Perry appears to take the position that the court's second order is also before us, we disagree. Perry did not appeal the order vacating the second order.
[51] 4 Lewis H. Orland & Karl B. Tegland, Washington Practice: Rules Practice, 26 at 74 (4th ed. 1992) ("The duty [to supplement responses] will normally be enforced ... through sanctions imposed by the trial court, including exclusion of evidence, continuance, or other action, as the court may deem appropriate."; see also 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 2050 at 610-614 (2nd ed.1994) (listing the ability to grant a continuance as one of many sanctions a trial court can impose for a failure to supplement responses under the federal rules).
[52] Steele v. Lundgren, 96 Wash.App. 773, 780, 982 P.2d 619 (1999), review denied, 139 Wash.2d 1026, 994 P.2d 846 (2000).
[53] Martinez v. City of Tacoma, 81 Wash.App. 228, 239, 914 P.2d 86, review denied, 130 Wash.2d 1010, 928 P.2d 415 (1996) (citation omitted); Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 598-99, 675 P.2d 193 (1983).
[54] Steele, 96 Wash.App. at 780, 982 P.2d 619.
[55] Martinez, 81 Wash.App. at 236, 914 P.2d 86 (quoting City of Riverside v. Rivera, 477 U.S. 561, 575, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)).
[56] See Wheeler v. Catholic Archdiocese of Seattle, 124 Wash.2d 634, 643, 880 P.2d 29 (1994).