# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 79110-9-I |
| v. | UNPUBLISHED OPINION |
| CAVIT MUM, a/k/a JAVIT MUMCU, | |
| Appellant. | |

DWYER, J. — Cavit Mum appeals from a superior court order revoking his conditional release from Western State Hospital. Mum contends that the superior court erred by revoking his conditional release because the State failed to prove, by a preponderance of the evidence, that Mum posed a substantial danger to public safety. Because Mum assigns no error to the court's findings of fact, and these findings support the order revoking his conditional release, we affirm.

I

Cavit Mum was committed for treatment at Western State Hospital in 1993 after he was acquitted of arson in the first degree and attempted murder in the first degree on the basis that he was not guilty by reason of insanity. Mum returned to the community in 2003 under a conditional release. In 2017, Mum was arrested and returned to Western State Hospital after he wrote letters to a

real estate agent and a woman who frequented the gas station at which Mum was employed. After Mum was readmitted to Western State Hospital, the State petitioned the court to revoke Mum's conditional release. At the 2018 revocation hearing, the superior court found:[1]

1. On three separate occasions between August and October of 1991, the defendant Cavit Mum set fire, using gasoline, to the house of Muazzez Eren. In January of 1993, Mr. Mum admitted to setting all three fires, claiming he did so to drive Eren, who Mum believed was a witch, away and thus preventing her witchcraft from further effecting his life. Mr. Mum was charged with three counts of attempted Murder in the First Degree and three counts of Arson in the First Degree. On November 3, 1993, Mr. Mum was acquitted by reason of insanity of all counts and, having [to] be found a substantial danger to others and presenting a substantial likelihood of committing felonious acts jeopardizing the public safety or security, was committed to the care and custody of the Department of Social and Health Services for treatment at Western State Hospital.

2. On September 17, 2003, the court found Mr. Mum could be released conditionally without substantial danger to other persons or a substantial likelihood of committing felonious acts jeopardizing public safety or security. At that time, the court ordered Mr. Mum released upon such conditions as were necessary to protect the safety and the security of the public and provide for the care and treatment of the defendant. He was conditionally released at that time to the WSH Community Program. Later, in October, 2005, Mr. Mum released to a community placement. Mr. Mum was readmitted to WSH in October of 2006 and returned to community placement in March, 2007.

3. In September, 2017, the court denied Mr. Mum's petition for a final release pursuant to RCW 10.77.200. At that time, the court found that Mr. Mum continued to suffer from a mental disease or defect and to exhibit delusions and paranoia. The court also found Mr. Mum continued to present, as a result of this mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing

---

[1] As Mum does not assign error to any of the superior court's findings of fact, we accept these findings as verities. State v. Stenson, 132 Wn.2d 668, 697, 940 P.2d 1239 (1997).

criminal acts jeopardizing public safety or security unless kept under further control by the court or other persons or institution.

4. In August and September, 2017, Mr. Mum was in contact with and wrote letter[s] to two members of the public. This contact and these letters lead to his arrest and subsequent readmission to WSH. Although the contact and the letters did not constitute any crimes or a per se violation of Mr. Mum's conditional release; the content of the contact and the letters drew into question the state of Mr. Mum's mental health and revealed its deterioration.

5. Pending [the revocation] hearing, WSH doctors and staff have had significant opportunity to observe and interact with Mr. Mum. Mr. Mum is currently diagnosed with Schizophrenia, Paranoid Type, and currently exhibits paranoid, delusional beliefs revolving around themes of witches and witchcraft, despite being medicated to manage these symptoms of psychosis. Mr. Mum's beliefs that his previous therapist, Linda Salazar, is performing witchcraft on Mr. Mum and that his attorney has been influenced by witchcraft have significantly increased since his placement in the community. Besides the testimony and reports of WSH doctors and staff, these delusional, paranoid beliefs are evidenced in the multiple letters received by the court from Mr. Mum wherein Mr. Mum speaks about individuals who are performing witchcraft upon him and include Mr. Mum's request the court execute two individuals he has identified as witches.

The court subsequently found that Mum's mental condition had deteriorated, and that he had failed to manage his illness—a violation of the conditions of his release. The court also found that the State had established, by a preponderance of the evidence, that Mum posed a substantial danger to others. The superior court cited to the following evidence to support this finding:

a. Mr. Mum committed his original crimes of attempted murder and arson because he believed the victim of those crimes was a witch and was performing witchcraft upon him;

3

b. Mr. Mum currently exhibits similar delusional beliefs, specifically that his prior therapist, Linda Salazar, who has not worked at WSH or with Mr. Mum for more than 8 years, is a witch performing witchcraft upon him. Mr. Mum also believes a second individual is a witch performing witchcraft upon him and his attorney is under the influence of witchcraft;

c. Mr. Mum has sent the court many letters talking about witchcraft, identifying Ms. Salazar and another person as a witch, and specifically, in one letter, asking the court to execute these two individuals;

d. Mr. Mum believes that his current therapist, Lenise McClellan, is not being truthful with him, is working against his improvement, and is preventing his mail from being sent;

e. The unrebutted opinion of Dr. Ehlers and Dr. Means is that Mr. Mum presents a danger to others if he is released from WSH;

f. Dr. Ehlers's belief that Mr. Mum is a danger to others is based upon, among other things, that:

a. Mr. Mum['s] current symptoms are very similar to his original symptoms at the time of his crimes, and

b. Mr. Mum's current delusions are more dangerous than at the time of his crimes because Mr. Mum has incorporated his mental health treatment providers into these delusions.

Consequently, the court revoked Mum's conditional release and ordered him recommitted to Western State Hospital.

II

Mum contends that the superior court erred by revoking his conditional release. This is so, Mum asserts, because "[t]he State failed to prove by a preponderance of the evidence that Mr. Mum is currently a substantial danger to public safety, as required to revoke his conditional release and commit him

involuntarily to Western State Hospital." Mum also avers that the State must demonstrate that Mum "threatened or harmed" someone to prove that he is dangerous. Because Mum assigned no error to any of the superior court's findings of fact—which support the superior court's order revoking Mum's conditional release—and no case or statutory authority demands an explicit threat or actual harm to prove dangerousness, Mum has failed to establish that the superior court erred by revoking his conditional release.

Our Rules of Appellate Procedure plainly state that "[a] separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number." RAP 10.3(g). We treat unchallenged findings as verities on appeal. State v. Stenson, 132 Wn.2d 668, 697, 940 P.2d 1239 (1997). We must determine if the findings of fact support the superior court's conclusions of law. Perry v. Costco Wholesale, Inc., 123 Wn. App. 783, 792, 98 P.3d 1264 (2004) (citing City of Tacoma v. State, 117 Wn.2d 348, 361, 816 P.2d 7 (1991)). We review de novo challenges to the superior court's conclusions of law. Perry, 123 Wn. App. at 792.

A court may order the conditional release of a person it committed for treatment following a not guilty by reason of insanity acquittal. RCW 10.77.150. The court may subsequently revoke a conditional release on a showing that the released person has violated the conditions of the release. RCW 10.77.190(2), (4). Additionally, and to comply with constitutional due process requirements, the court must also find that the conditionally released person is both mentally ill and poses a substantial danger to public safety. State v. Bao Dinh Dang, 178 Wn.2d

868, 875-76, 879-80, 312 P.3d 30 (2013) (quoting O'Connor v. Donaldson, 422 U.S. 563, 575, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975)). The State must prove these facts by a preponderance of the evidence. Bao Dinh Dang, 178 Wn.2d at 882 (citing Jones v. United States, 463 U.S. 354, 367, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983)).

In his brief, Mum does not assign error to any finding of fact. Therefore, we accept the superior court's findings as verities. Stenson, 132 Wn.2d at 697. The superior court found "that Mr. Mum is a substantial danger to public safety." This finding of fact, along with the superior court's other unchallenged findings that Mum was mentally ill and had violated the conditions of his release, support its order revoking Mum's conditional release. Mum does not establish that the superior court erred.

Furthermore, even if Mum had properly assigned error to the findings, no case or statutory authority requires the State to establish that the conditionally released person explicitly threatened or actually harmed someone to prove dangerousness. The law only requires the State to prove substantial dangerousness to public safety by a preponderance of the evidence, with no gloss on how it should do so. Bao Dinh Dang, 178 Wn.2d at 882. We reject Mum's effort to add such a requirement to the law where none exists. [2]

---

[2] Additionally, we note that the record establishes that Mum sent letters to the superior court explicitly requesting the court to order the execution of several people he believed to be witches, stating that "the court should contact FBI . . . . These 3 should die." This plainly constitutes threatening behavior.

Affirmed.

Dwyer, J.

WE CONCUR:

Smith, J.                    Leach, J.