# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

     v.

I.J.S.,

                Appellant.

DIVISION ONE

No. 82559-3-I

UNPUBLISHED OPINION

DWYER, J. — Based on an incident during which juvenile I.J.S. attempted to spit at a police officer, the juvenile court found I.J.S. guilty of assault in the third degree. I.J.S. contends that (1) insufficient evidence supports the conviction and (2) the trial court erred in denying I.J.S.'s motion to suppress evidence of the assault. Finding no error, we affirm.

I

On March 26, 2020, Sergeant Fairchild, Officer Burnett, and Officer Wallace responded to several 911 calls about a domestic violence event ongoing at an apartment complex in Everett. A witness at the scene showed officers a short video of two individuals fighting and informed the officers that the individuals in the video had gone to unit 52.

The officers went to unit 52 and heard yelling from inside. Sergeant Fairchild went around to the back of the unit while Officers Burnett and Wallace

stayed at the front door. After Officer Wallace knocked and announced the presence of the Everett Police Department, I.J.S.'s mother opened the front door and yelled that her son had been assaulted and "continued to yell, but [police] were unable to understand what she was saying to us because of how emotional she was." I.J.S. was also yelling in the background.

All three officers entered the apartment and separated I.J.S. and his mother. Sergeant Fairchild and Officer Wallace took I.J.S. into the living room and asked him to sit on the couch. Officer Burnett described the ensuing events as follows in his police report:

> [I.J.S.] began to comply, but the[n] got up and attempted to climb over the couch and go toward his mother. Both officers then took ahold of [I.J.S.] and attempted to sit him back down on the couch. [I.J.S.] was non-compliant with verbal commands and began to resist the officers. [I.J.S.] continued to resist the officers and appeared to be trying to get away from them. [I.J.S.]'s resisting eventually pulled all three of them to the ground. On the ground he continued to fight, attempting to get away from Sgt. Fairchild and MPO N Wallace. While on the ground, Sgt. Fairchild and MPO N Wallace were able to get [I.J.S.] onto his stomach and place him into handcuffs. MPO N Wallace then left Sgt. Fairchild to assist me with [the mother], who was continuing to scream throughout this interaction.

> While I was trying to talk to [the mother], I heard her shout, "Don't do that, that's assault of an officer!" This caught my attention and I turned to Sgt. Fairchild who was with [I.J.S.]. I saw that Sgt. Fairchild had his glasses knocked off his face and that he was attempting to put them back on. I later learned that [I.J.S.] had turned his head and spit directly at Sgt. Fairchild's face and then attempted to throw Sgt. Fairchild off him. This had caused Sgt. Fairchild's glasses to get knocked off his head.

> Sergeant Fairchild reported that

> [I.J.S.] continued to yell that we needed to leave the apartment. He eventually stood up on the couch and started to leap toward Ofc

2

Burnett and his mother. MPO Wallace and I grabbed [I.J.S.] and attempted to control his movement. I had his left arm, while MPO Wallace held his right. While giving him commands to stop resisting and to calm down, [I.J.S.] attempted to pull his arms free. In order to better control [I.J.S.], MPO Wallace and I took [I.J.S.] to the living room floor. There I pinned his left arm while MPO Wallace handcuffed his right. I then moved [I.J.S.]'s left wrist to his lower back area where he was handcuffed.

While we were attempting to control [I.J.S.], Ofc Burnett was trying to contain [the mother]. I could hear her yelling about us hurting her son. With [I.J.S.] secured, I told MPO Wallace he could help Ofc Burnett with [the mother]. Once MPO Wallace released [I.J.S.]'s right arm, I moved to sit on top of [I.J.S.]. He continued to move and attempted to get to his right side, facing me. Through my experience (23 years as an Everett Police Officer), I know a person attempting to turn toward an officer will likely attempt to kick or assault them. I used my knees to pin [I.J.S.]'s arms down, while seated on his back. After he complained, and promised to comply with my instructions, I moved to his left side. [I.J.S.] started to yell and call me a "fucking nigga" and similar phrases. At one point, he lifted his head and turned toward me. I saw him form a loogie and start to prepare to spit it at me. At the last second I moved to my right as the loogie went past me by just inches.

Finally, Officer Wallace's described the events as follows:

As I made my way to the kitchen I observed [I.J.S.] began to try and climb over the couch in the direction of [the mother]. We stopped him before he could get into the kitchen. We both took grasp of one of his arms. I am not sure if it was the left or right arm I grabbed. [I.J.S.] was now twisting and trying to get out of our grasp. We then forced [I.J.S.] to the ground and onto his stomach. When I forced him down I did so by applying forward and downward pressure to his shoulder. He resisted going to the ground, but we were able to overpower him. Once he was on the ground I detained him in handcuffs.

As this was going on [the mother] became even more enraged and began screaming at us. [I.J.S.] was trying to buckle and escape our control, but we were able to pin him down. Once we had control of him I left to help Officer Burnett.

[The mother] was still screaming and I tried to get her to calm down to tell me what happened. My back was to [I.J.S.] and Sgt Fairchild. There was still a commotion coming from [I.J.S.] as Sgt

3

Fairchild tried to contain him.  I then heard the commotion escalate and [the mother] then yelled "Don't do that, that's assault on an officer".  I turned my head to see Sgt Fairchild struggling to keep [I.J.S.] down.  I went to assist him and held his legs in place.  I was then informed by Sgt Fairchild that [I.J.S.] tried spitting in his face.

I.J.S. was charged with assault in the third degree.  I.J.S. moved to suppress all evidence of what occurred in the apartment based on the contention that it was the result of a warrantless entry.  The trial court concluded both that the exigent circumstances exception to the warrant requirement applied and that the officers' entry into the apartment was lawful.

Following a bench trial on stipulated facts, namely the police reports quoted above, the trial court found I.J.S. guilty as charged.

I.J.S. appeals

II

Initially, we address the sufficiency of the evidence claim.  However, in order to do so we must begin by addressing the scope of our review.  Relying on our State Supreme Court's decision in State v. Homan, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014), I.J.S. contends that our review is "limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law."[1]  This standard, however, conflicts with the sufficiency of the evidence standard for criminal cases announced by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), and adopted by our Supreme Court in State v. Green, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980).  Because we believe that

---

[1] Br. of Appellant at 11.

the Supreme Court misspoke in its <u>Homan</u> decision, we apply the <u>Jackson</u> standard instead.

In <u>Jackson</u>, the Court held that

[a]fter [<u>In re</u>] <u>Winship</u>[, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970),] the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  <u>Woodby v. INS</u>, 385 U.S. [276,] 282[, 87 S. Ct. 483, 17 L. Ed.2d 362 (1966)] (emphasis added).  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  <u>See</u> <u>Johnson v. Louisiana</u>, 406 U.S. [356,] 362[, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972)].  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

443 U.S. at 318-19 (footnote omitted).

As previously mentioned, our Supreme Court adopted the <u>Jackson</u> standard in <u>Green</u>, 94 Wn.2d at 220-22.  It later applied that standard, unaltered, to the result of a bench trial in <u>State v. Salinas</u>, 119 Wn.2d 192, 201-02, 829 P.2d 1068 (1992).

Without question, I.J.S. correctly sets forth the standard of review described in <u>Homan</u>.  Indeed, the <u>Homan</u> court stated that

following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law.  <u>State v.</u>

5

> Stevenson, 128 Wn. App. 179, 193, 114 P.3d 699 (2005).[2]
> "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. Id. We treat unchallenged findings of fact supported by substantial evidence as verities on appeal. Schmidt v. Cornerstone Invs., Inc., 115 Wn.2d 148, 169, 795 P.2d 1143 (1990).

181 Wn.2d at 105-06.[3]

The Homan court did not explain that it was intending to overrule the precedent set by Green or Salinas. It is a longstanding principle that when our Supreme Court has expressed a clear rule of law, it "will not overrule such binding precedent sub silentio." State v. Studd, 137 Wn.2d 533, 548, 973 P.2d 1049 (1999); accord Eastwood v. Horse Harbor Found., Inc., 170 Wn.2d 380, 388, 241 P.3d 1256 (2010); Lunsford v. Saberhagen Holdings, Inc., 166 Wn.2d 264, 280, 208 P.3d 1092 (2009). Accordingly, we conclude that Homan did not intend to overrule Salinas or Green with regard to the applicability of the Jackson standard to appellate review for sufficient evidence.

As has been previously explained, the procedure described in Homan is inconsistent with the standard set forth in Jackson in five ways:

> First, Jackson did not distinguish between a conviction resulting from a trial by jury and a conviction resulting from a bench trial. There are not different standards. The same standard applies in all cases, as the "question whether a defendant has been convicted upon inadequate evidence is central to the basic question of guilt or innocence." Jackson, 443 U.S. at 323. However, the Court in Jackson did, in fact, review a conviction resulting from a bench trial. 443 U.S. at 309. Irrefutably, the standard set forth in Jackson is the

---

[2] Division Two's Stevenson decision relies on a civil case for this proposition. See Stevenson, 128 Wn. App at 193 (citing Perry v. Costco Wholesale, Inc., 123 Wn. App. 783, 792, 98 P.3d 1264 (2004)).

[3] Interestingly, the Homan decision cites Salinas for the proposition that in "claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." Homan, 181 Wn.2d at 106 (citing Salinas, 119 Wn.2d at 201).

6

correct standard for determining whether a conviction resulting from a bench trial is supported by a constitutionally sufficient quantum of evidence.

Second, the Homan court's standard focuses review on the result reached by the specific trial judge in each case. 181 Wn.2d at 105-06 ("appellate review is limited to determining whether substantial evidence supports the findings of fact"). This is wrong. Jackson requires that a reviewing court determine whether "*any* rational trier of fact" could have found the defendant guilty beyond a reasonable doubt. 443 U.S. at 319. The focus is not on one particular trial judge or one particular juror. To the contrary, it is an objective standard.

Third, the Homan standard limits review of the evidence in the record to evidence set forth in the trial judge's factual findings. 181 Wn.2d at 105-06 ("appellate review is limited to determining whether substantial evidence supports the findings of fact"). Again, this is wrong. The Jackson standard plainly requires a reviewing court to consider *all* of the evidence, not just the evidence credited by the trial judge in findings of fact. 443 U.S. at 319.

Fourth, the Homan standard views only the trial judge's findings of fact in the light most favorable to the prosecution. See 181 Wn.2d at 106 ("We treat unchallenged findings of fact and findings of fact supported by substantial evidence as verities on appeal."). In contrast, the Jackson standard requires "that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." 443 U.S. at 319.

Fifth, the Homan standard requires only "substantial evidence" to support a trial judge's findings of fact supporting a conviction. This is not the same standard as required by the United States Supreme Court. Jackson requires a reviewing court to determine that the record contains sufficient evidence to enable any rational trier of fact to find "the essential elements of the crime [proved] beyond a reasonable doubt." 443 U.S. at 319.

In sum, Homan's sufficiency of the evidence standard for reviewing convictions resulting from bench trials conflicts with the Jackson standard. It harms the prosecution by narrowing the inquiry on review to consider only a portion—rather than all—of the evidence adduced at trial and by relying solely on whether a specific fact finder—as opposed to any rational fact finder—could reasonably convict the defendant. Simultaneously, it harms defendants by supplanting the demanding beyond a reasonable

7

> doubt standard with the less stringent substantial evidence standard.

State v. Stewart, 12 Wn. App. 2d 236, 246-48, 457 P.3d 1213 (2020) (Dwyer, J., concurring) (footnote omitted).

In addition to the problems noted above, there is yet another serious problem that arises as a result of the application of the Homan standard of review: it penalizes criminal defendants who invoke their right to a jury trial while, at the same time, incentivizing the waiver of that right. This is so because an appellate challenge to the sufficiency of the evidence to support a conviction will be evaluated differently depending on whether the conviction was the result of a decision made by a jury or by a judge. If a jury returned a guilty verdict, all of the evidence admitted at trial will be considered on appeal to determine if sufficient evidence supports the conviction. However, if the conviction results from a trial judge's finding of guilty, only the evidence described in the court's findings of fact—and the "substantial evidence" supporting those findings—can be considered. In other words, less than all of the evidence can be considered. Obviously, the standard of review mandating that less than all of the evidence be considered is more favorable to a defendant than is the standard of review mandating that all of the evidence be considered. In this way, defendants are punished for invoking their right to a jury trial.

There is also no independent state right underlying the substantial evidence standard discussed in Homan. "Washington has adopted the federal standard for sufficiency review." State v. Johnson, 188 Wn.2d

742, 758, 399 P.3d 507 (2017) (citing Green, 94 Wn.2d at 221).

Accordingly, when reviewing a criminal conviction, "Washington's *sole* evidentiary sufficiency standard is that which the Fourteenth Amendment requires." State v. Tyler, 195 Wn. App. 385, 394, 382 P.3d 699 (2016), aff'd on other grounds, 191 Wn.2d 205, 422 P.3d 436 (2018).

Thus, we review the sufficiency of the evidence herein to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

III

I.J.S. contends that because his attempt to spit on Sergeant Fairchild was unsuccessful there was an insufficient quantum of evidence adduced at trial to support his conviction of assault in the third degree. We disagree.

A person commits assault in the third degree when that person, "under circumstances not amounting to assault in the first or second degree . . . [a]ssaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." RCW 9A.36.031(1)(g). Because the term "assault" is not statutorily defined, the common law definition applies. State v. Stevens, 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006).

> Washington recognizes three common law definitions of assault: (1) an attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another

in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm.

Stevens, 158 Wn.2d at 311. The second of these definitions, assault by actual battery, is "'an intentional touching or striking of another person that is harmful or offensive, regardless whether it results in any physical injury.'" State v. Cardena-Flores, 189 Wn.2d 243, 266, 401 P.3d 19 (2017) (quoting Stevens, 158 Wn.2d 314 (Madsen, J., dissenting)).

Regardless of whether spitting at a person (but missing) falls within this common law definition, a rational trier of fact could conclude that I.J.S. assaulted a law enforcement officer based on Officer Burnett's report that I.J.S.'s pulled two police officers to the ground and continued to fight from the ground. Pulling a person to the ground is an intentional and offensive contact. A rational trier of fact could infer from Officer Burnett's report that I.J.S. "continued to fight" and that I.J.S. attempted to cause bodily injury to the police officers that he had just pulled to the ground. Thus, a constitutionally sufficient quantum of evidence supports I.J.S.'s conviction.

IV

Next, I.J.S. contends that the trial court erred by denying his motion to suppress his criminal conduct in the apartment because the police entered the apartment without a warrant. As there is no evidence at issue that was lawfully subject to suppression, even if no exception to the warrant requirement applied, we disagree.

We review the denial of a motion to suppress to determine whether substantial evidence supports the trial court's findings of fact and whether the

10

findings of fact support the trial court's conclusions of law.  State v. Boisselle, 194 Wn.2d 1, 14, 448 P.3d 19 (2019).  We may affirm the trial court on any ground supported by the record.  State v. Costich, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

Here, the evidence I.J.S. sought to suppress is evidence of his own behavior after officers entered the apartment.  But such evidence is not subject to the exclusionary rule.  "Even if the entry or arrest by law enforcement officers was unlawful, the exclusionary rule does not foreclose admission of evidence of the assaults where the officers are identified as such, are performing official duties in good faith, and there was no exploitation of any constitutional violation."  State v. Mierz, 127 Wn.2d 460, 475, 901 P.2d 286 (1995).[4]

Rather, the exclusionary rule extends only to the fruits of the unlawful search or seizure resulting from the illegal actions of the police.  State v. Aydelotte, 35 Wn. App. 125, 131-32, 665 P.2d 443 (1983) (citing Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).  "It is not a 'but for' rule of causation leading to suppression of all evidence obtained after the improper conduct."  State v. D.E.D., 200 Wn. App. 484, 491, 402 P.3d 851 (2017) (citing Wong Sun, 371 U.S. at 487-88).

---

[4] I.J.S. also suggests, without assigning error, that the case should be dismissed because the "undisputed facts show outrageous misconduct by the officers in question."  Br. of Appellant at 29.  I.J.S. concedes that our Supreme Court held in State v. Valentine, 132 Wn.2d 1, 21, 935 P.2d 1294 (1997), that individuals "faced only with a loss of freedom" may not use force to resist illegal police behavior.  I.J.S. argues that "Valentine seems to be based on an outmoded and unrealistic view of how police commonly treat the citizenry they suspect of crime."  Br. of Appellant at 27.  We leave an analysis of Valentine's continued viability to the Supreme Court. See State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).  Moreover, I.J.S.'s claim that the officers engaged in undisputed "outrageous misconduct" is simply not supported by the record.

Accordingly, we need not address whether the trial court properly ruled that exigent circumstances justified the warrantless entry into the apartment. As evidence of I.J.S.'s assault of an officer was not subject to exclusion, the trial court did not err by denying his motion to suppress.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____          _____
Smith, J.                        Verellen, J.